C. Jon Development Corporation, an Illinois Corp., Plaintiff-Appellee, v. The Pand-Rorsche Corporation, et al., Defendants. Evanston Motor Co., Inc., Defendant-Appellant.

Gen. No. 50,590.

First District, First Division.

April 11, 1966.

McMahon & Plunkett, and Charles R. Purcell, Jr., of Chicago, for defendant-appellant, Evanston Motor Co., Inc.

Francis T. Delaney, of Chicago, for plaintiff-appellee.

MR. JUSTICE BURMAN delivered the opinion of the court.

Plaintiff, C. Jon Development Corporation, commenced an action in replevin to recover a Mercedes-Benz automobile. Subsequently, an amended complaint was filed in trover seeking to recover from the Evanston Motor Company, Inc., the sum of $3,200 the money value of the automobile, and additional damages in the sum of $750 for the wrongful detention, use, and deprivation of the automobile. The trial court entered judgment for the plaintiff in the amount of $1,600 without costs, and Evanston Motor Company has appealed.

We summarize the evidence. Early in June of 1963, the plaintiff advertised a 1958 Mercedes-Benz automobile for sale in a Chicago newspaper. A representative of Pand-Rorsche Corporation, an automobile dealer at 5725 North

Broadway Avenue in Chicago, responded by telephone, and at Pand-Rorsche's request the car was brought to its premises. On June 6, a sale was effected, and William Patzer, plaintiff's president, received from Pand-Rorsche a check for $1,000; a draft for $3,200 payable on July 7, 1963; and a letter signed by "Lee Thomas" (a false name), as president of Pand-Rorsche, which recited the terms of the sale and stated that the plaintiff was, "to remain legal owner of said vehicle" until the draft was paid in full. Patzer endorsed in blank the certificate of title to the car, and delivered it to Pand-Rorsche. The certificate bore no indication of any security interest in the vehicle. A new certificate of title was issued by the Office of the Secretary of State on June 14, showing Pand-Rorsche as the owner and listing no liens or encumbrances.

On June 15, 1963, Donald C. Lightner, a wholesale car buyer, visited Pand-Rorsche and purchased the Mercedes-Benz and several other automobiles on behalf of the defendant, the Evanston Motor Company. It is undisputed that at the time of the sale to the defendant, neither Lightner nor any other person associated with the defendant had notice of any existing security interests in the automobile. Lightner gave Pand-Rorsche defendant's check dated June 17, in payment for the automobiles, and delivery of the cars and the titles thereto were made to the defendant. The certificate of title to the Mercedes-Benz, which was endorsed in blank by "Thomas" on behalf of Pand-Rorsche and acknowledged by a notary public who was employed by defendant, bore no indication of any existing liens or encumbrances.

Nicholas Ferri, a chief investigator for the Office of the Secretary of State, testified that his office uncovered the perpetration of fraud by Pand-Rorsche about June 18, and shortly afterwards put a "stop" on issuing certificates of title on any cars sold by Pand-Rorsche because, "there

471

were so many strings and so many ends that were untied that the only way we could try possibly to stop this fraud was to put a stop on all Illinois processing." On June 20 and 21, articles appeared in the daily newspapers reporting that Pand-Rorsche had been raided and closed as a fraudulent operation. Thereafter, Ferri had several telephone conversations with Joseph Saporito, president of defendant, in which Ferri told Saporito a "hold" had been placed in Springfield on any transfers of title to the Mercedes-Benz, and advised Saporito not to dispose of the car. Saporito testified he told Ferri he had paid for all of the cars he had purchased, and that he had good title to them. On July 10, Lightner was in Kansas City in response to a subpoena to appear as a government witness in a federal court, and while there he sold the car for $3,200, on behalf of the defendant and with the express approval of Saporito.

The question presented by this appeal is whether under these circumstances the security interest reserved by plaintiff in selling the automobile to Pand-Rorsche can be enforced against the defendant, a subsequent purchaser who had no notice of the plaintiff's interest. The Illinois Motor Vehicle Law (Ill Rev Stats 1963, c 95½) establishes the method for perfecting and giving notice of security interests subject to that act, and provides that such method is exclusive. Ill Rev Stats 1963, c 95½, § 3–207. Section 3–202 of that act provides, in part:

§ 3–202. Perfection of security interests. (a) Unless excepted by section 3–201, a security interest in a vehicle of a type for which a certificate of title is required is not valid against creditors of the owner or subsequent transferees or lienholders of the vehicle unless perfected as provided in this act.

(b) A security interest is perfected by the delivery to the Secretary of State of the existing certificate of title, if any, an application for a certificate of title,

472

containing the name and address of the lienholder and the date of his security agreement and the required fee. . . .

■ Plaintiff admittedly endorsed in blank the certificate of title to the automobile, which stated that there were no liens against it, and delivered the certificate to Pand-Rorsche. William Patzer, president of plaintiff's corporation who also operates parking lots and who, by his own testimony, had purchased about 20 cars in the period from 1955 to 1961, could be presumed to be familiar with the automobile business and the titling procedures. It was his failure to comply with the mandate of the statute which enabled Pand-Rorsche fraudulently to resell the car without disclosing to the buyer the plaintiff's security interest in it. Under the provisions of § 3–202, therefore, plaintiff's security interest was not valid as against defendant, a subsequent transferee.

Certain security interests, however, are exempted by § 3–201 from the perfection requirements of § 3–202. Section 3–201 (Ill Rev Stats 1963, c 95½, § 3–201) reads in part as follows:

> § 3–201. Excepted liens and security interests. This Article does not apply to or affect:
>
> . . .
>
> (c)  A security interest in a vehicle created by a manufacturer or dealer who holds the vehicle for sale, *but a buyer in the ordinary course of trade from the manufacturer or dealer takes free of the security interest.* (Emphasis ours.)

If defendant were a buyer in the ordinary course of trade, therefore, it would take title to the automobile free of plaintiff's security interest, even if that interest fell within the exception carved out by § 3–201.

The Motor Vehicle Law itself contains no definition of the phrase, "buyer in the ordinary course of trade." The

Uniform Trust Receipts Act (Ill Rev Stats 1961, c 121½, § 166 et seq.), which has since been supplanted in Illinois by the Uniform Commercial Code, contained the following definition of that phrase:

> § 166. Definitions. That in this Act, unless the context or subject matter otherwise requires: (1) "Buyer in the ordinary course of trade" means a person to whom goods are sold and delivered for new value and who acts in good faith and without actual knowledge of any limitation on the trustee's liberty of sale, including one who takes by conditional sale or under a pre-existing mercantile contract with the trustee to buy goods delivered, or like goods, for cash or on credit. "Buyer in the ordinary course of trade" does not include a pledgee, a mortgagee, a lienor, or a transferee in bulk. (Ill Rev Stats 1961, c 121½, § 166(1)).

This court, in General Finance Corp. v. Krause Motor Sales, 302 Ill App 210, 23 NE2d 781, interpreted the Uniform Trust Receipts Act's definition of this phrase to include a dealer who purchased several cars from another dealer without knowledge of the fact that the selling dealer had previously created a security interest in the automobiles.

The Uniform Commercial Code altered the phrase to read, "buyer in the ordinary course of business," and defined it as follows:

> "Buyer in the ordinary course of business" means a person who in good faith and without knowledge that the sale to him is in violation of the ownership rights or security interest of a third party in the goods buys in ordinary course from a person in the business of selling goods of that kind but does not include a pawnbroker. "Buying" may be for cash or by exchange of other property or on secured or un-

secured credit and includes receiving goods or documents of title under a preexisting contract of sale but does not include a transfer in bulk or as security for or in total or partial satisfaction of a money debt. (Ill Rev Stats 1963, c 26, § 1–201(9)).

■ We are of the opinion that the defendant in this case was clearly a buyer in the ordinary course of trade. It is undisputed that defendant and its agents, at the time of the purchase of the automobile from Pand-Rorsche, had no notice of any liens or encumbrances on the automobile, or of any interest plaintiff may have had therein. Therefore, even if this security interest is included within the exception carved out by § 3–201, defendant would nevertheless take clear title to the automobile, free from any claims of the plaintiff.

■ Plaintiff's primary contention is that the defendant's conduct, after learning of the security interest in the automobile, should prevent him from asserting the rights of a buyer in the ordinary course of trade. Particular stress is placed upon the fact that the defendant's agent sold the automobile in another state after the representative of the Office of the Secretary of State had advised him not to dispose of it. But in our view the wisdom and propriety of the defendant's conduct in so doing bears no relation to the quality of the title which he took at the time of the purchase of the automobile from Pand-Rorsche. Plaintiff's failure to protect his security interest, and the fact that at the time of the purchase from Pand-Rorsche defendant was a buyer in the ordinary course of trade, freed the defendant's title from plaintiff's security interest. Events occurring thereafter have no relevance for this purpose.

■ Plaintiff also contends that defendant did not take good title to the automobile because the title certificate was forged, in that the president of Pand-Rorsche signed a fictitious name to the certificate in conveying it to

the defendant. Plaintiff claims that, "Defendant knew, or should have known, this title had a link in it which was forged." Our attention is directed to the fact that the signature of "Lee Thomas" was acknowledged by a notary public who was employed by the defendant.

Prior to these dealings, neither of the parties was familiar with the personnel of Pand-Rorsche. When Lee Thomas was introduced by that name as owner and president of Pand-Rorsche, defendant's agents had no reason to suspect a fictitious name was being used. It was natural that when the same person presented himself at the premises of Evanston Motor Co. and signed that name to the application for title, the notary public would, under the circumstances, acknowledge his signature as true. There is no evidence to support plaintiff's contention that Evanston Motor Company "knew, or should have known, this title had a link in it which was forged." Furthermore, the record gives us no grounds for questioning the fact that the man who signed as Lee Thomas, although using a false name, was in fact the president of Pand-Rorsche, and was competent to buy and sell automobiles on behalf of Pand-Rorsche.

For the foregoing reasons, the judgment of the Circuit Court of Cook County is reversed and the cause remanded with directions that judgment be entered that plaintiff take nothing by this action and that Evanston Motor Company have judgment for its costs.

Reversed and remanded with directions.

KLUCZYNSKI, P. J. and MURPHY, J., concur.