HUBER PONTIAC, INC., Plaintiff-Appellant, *v.* JAMES R. WELLS, JR., *et al.*, Defendants-Appellees.—DON L. HUSTON, Plaintiff-Appellee, *v.* THE SECRETARY OF STATE *et al.*, Defendants-Appellants.

Fourth District    Nos. 14428, 14540 cons.

Opinion filed April 14, 1978.—Rehearing denied May 16, 1978.

GREEN, P. J., dissenting in part and concurring in part.

George W. Cullen and Patrick V. Reilly, both of Sorling, Northrup, Hanna, Cullen and Cochran, Ltd., of Springfield, for appellants.

Robert A. Stuart, Sr., of Brown, Hay & Stephens, of Springfield, for appellees.

Mr. JUSTICE WEBBER delivered the opinion of the court:

These consolidated appeals arise out of two proceedings in the circuit court of Sangamon County, the subject matter of which was a used 1974 Pontiac automobile. The auto was sold by Huber Pontiac, Inc., to James Wells on June 4, 1975. Wells financed the car by signing the usual form of conditional sales contract which the dealer, Huber Pontiac, afterwards discounted with a Springfield bank. The genesis of all this litigation was

the failure of Huber Pontiac to note on the certificate of title to the car the lien of the bank.

On November 21, 1975, Wells sold the car to Don Huston and delivered to Huston the certificate of title endorsed in blank. Meanwhile, Wells had defaulted on his payments under the contract to the assignee bank, and upon its demand, Huber Pontiac paid off the contract and brought a replevin action against Wells and Huston for the return of the car. The trial court dismissed Wells from that suit and rendered summary judgment for Huston. Appeal No. 14428 is from that judgment.

On January 20, 1976, approximately 60 days after his purchase of the car from Wells, Huston caused the title, bearing Wells' signature, to be notarized and then, in the idiom used by the parties "walked it through" the Secretary of State's office. We take this to mean that Huston hand-carried Wells' title to the office and remained there personally until a new title was issued in his name. This was accomplished. The replevin suit was pending at the time, but the record indicates that service had not yet been made on Huston.

On March 25, 1976, after some evidence had been taken in the replevin suit but before the trial court had rendered judgment, Huber Pontiac filed a petition with the Secretary of State to revoke the title "walked through" and issued to Huston. On March 30, 1976, summary judgment was entered for Huston in the replevin action.

The title revocation proceeding was heard by a hearing officer attached to the Secretary of State's office. He recommended revocation and the Secretary adopted his findings and on July 16, 1976, revoked the title issued to Huston.

On August 20, 1976, Huston filed in the circuit court of Sangamon County an administrative review action asking for review of the revocation. On the same day he filed a motion to reconsider with the Secretary of State. This motion was denied by the Secretary on September 28, 1976, but the record is clear that notice of the denial was not served on Huston's counsel until December 17, 1976. Thereupon, on January 17, 1977, within the 35 days limited by statute under section 4 of the Administrative Review Act (Ill. Rev. Stat. 1975, ch. 110, par. 267), summons in administrative review was issued by the clerk of the circuit court. On May 4, 1977, the trial court affirmed the Secretary of State. Appeal No. 14540 is from that judgment.

While the parties had exhibited a natural, albeit inaccurate, tendency to intermingle the two proceedings in their briefs and arguments, our view of the cases compels us to consider them separately. We believe that the revocation proceeding was nothing more than a tactical ploy by Huber Pontiac when it became convinced that it could not prevail on the replevin suit.

The replevin action: As noted above, the trial court entered summary judgment for Huston. Huber Pontiac has filed in this court a motion for summary judgment in its favor. We have taken the motion with the case and it is denied for reasons hereinafter more fully set forth. In passing, we note some inconsistency in Huber Pontiac's position: It argues that summary judgment for Huston was improper because of the existence of triable issues of fact, but by filing the motion on its own behalf, it appears to be saying that such issues apply to Huston only. We fail to comprehend how an issue of fact can relate to one party only.

■■ ■ At the outset we note two principles of law which are so elementary as to require no citation of authority: (1) In a replevin suit the plaintiff must prevail on the strength of his own title and not on any conceived weakness in the title of the defendant; and (2) the original contract between Huber Pontiac and Wells cannot bind Huston who was not a party to that agreement.

A summary of the positions taken by the parties is as follows: Huber Pontiac claims that Huston took title with notice of the lien, even though it did not appear on the face of the instrument and therefore he is not a subsequent transferee without notice; he did not obtain superior title from Wells and therefore must surrender up the property. Huston claims that he is entitled to rely on the written instrument of title and in the absence of any notation of lien, he takes title free and clear; he had no burden of informing the Secretary of State of the existence of any lien, if indeed he knew of one.

Section 3—207 of the Illinois Vehicle Code (Ill. Rev. Stat. 1975, ch. 95½, par. 3—207) provides the exclusive means for perfecting and giving notice of security interests in motor vehicles. Therefore, references by Huber Pontiac to the Uniform Commercial Code (Ill. Rev. Stat. 1975, ch. 26, par. 1—101 *et seq.*) are inappropriate. Section 3—202 of the Illinois Vehicle Code prescribes the mechanics for perfecting the lien. It is obvious that this was not done in this case and Huber Pontiac admits that the security interest never came into existence by reason of its failure to note it on the certificate of title.

Two questions then pose themselves: (1) To what extent may a transferee rely on the information contained on the certificate of title at the time of transfer? and (2) will knowledge of the security interest on the part of the transferee *dehors* the certificate operate to preserve that interest? Nearly all of the reported cases tend to intermix the questions, but the concensus appears to be that the certificate may be relied upon and knowledge of the unrecorded lien will not give it vitality in the hands of the transferee.

At the outset it must be borne in mind that the focus must be kept on events occurring on November 21, 1975, the date of sale to Huston. Huber

Pontiac would have us look to the date of issuance of certificate of title, January 20, 1976, and events subsequent thereto, and by some relation-back theory perceive that the lien was in existence at all times. Such is not the law. Section 3—112(e) of the Illinois Vehicle Code provides in part as follows:

> "(c) Except * * * as between the parties, a transfer by an owner is not effective until the provisions of this Section * * * have been complied with; * * *." (Ill. Rev. Stat. 1975, ch. 95½, par. 3—112(e).)

In *Perry v. Saleda* (1975), 34 Ill. App. 3d 729, 737, 340 N.E.2d 314, 321, the court said, in speaking of the effective date of transfer:

> "The fact that no application for transfer of title was mailed on Mrs. Carr's behalf until November 20, 1967, would not delay the effective transfer as between the parties."

It then follows that the situation as it existed on November 21, 1975, is critical.

It is undisputed that on that date Wells had a certificate of title in his name with no lien appearing thereon. Section 3—107(c) of the Vehicle Code makes such a certificate *prima facie* evidence of the facts appearing on it and this court so held in *Spaulding v. Peoples State Bank* (1975), 25 Ill. App. 3d 118, 323 N.E.2d 143. Huston was entirely justified in relying on the certificate. An automobile is not a peck of potatoes in the corner grocery store, title to which passes by possession. Illinois, like other States, has erected an elaborate system of title transfer for automobiles which has as one of its purposes, among others, the elimination of the ancient and outmoded doctrine of *caveat emptor*, at least insofar as the condition of the title is concerned.

If the certificate were in error, it was the fault of Huber Pontiac. The title registration system and the perfection of security interests in connection therewith is as much for the protection of the dealer as anyone. This was aptly stated in *Aurora National Bank v. Ed Fanning Chevrolet, Inc.* (1967), 85 Ill. App. 2d 394, 398, 229 N.E.2d 2, 4:

> "The transaction which gave rise to this litigation is very common in today's market place. * * * The legislature has sensibly foreseen the realities of the market place and placed a duty upon the dealer [to record the security interest] who is after all the beneficiary of the system."

A case closely in point is *C. Jon Development Corp. v. Pand-Rorsche Corp.* (1966), 69 Ill. App. 2d 469, 217 N.E.2d 416. In that case plaintiff sold an automobile to Pand-Rorsche and took a security interest which it did not record on the certificate of title. Pand-Rorsche then sold the car to Evanston Motor Co. The court held the sale was free of the unrecorded security interest, saying:

"We are of the opinion that the defendant in this case was clearly a buyer in the ordinary course of trade. It is undisputed that defendant and its agents, at the time of the purchase of the automobile from Pand-Rorsche, had no notice of any liens or encumbrances on the automobile, or of any interest plaintiff may have had therein. Therefore, even if this security interest is included within the exception carved out by §3—201, defendant would nevertheless take clear title to the automobile, free from any claims of the plaintiff.

Plaintiff's primary contention is that the defendant's conduct, after learning of the security interest in the automobile, should prevent him from asserting the rights of a buyer in the ordinary course of trade. Particular stress is placed upon the fact that the defendant's agent sold the automobile in another state after the representative of the Office of the Secretary of State had advised him not to dispose of it. But in our view the wisdom and propriety of the defendant's conduct in so doing bears no relation to the quality of the title which he took at the time of the purchase of the automobile from Pand-Rorsche. Plaintiff's failure to protect his security interest, and the fact that at the time of the purchase from Pand-Rorsche defendant was a buyer in the ordinary course of trade, freed the defendant's title from plaintiff's security interest. Events occurring thereafter have no relevance for this purpose." 69 Ill. App. 2d 469, 475, 217 N.E.2d 416, 419.

So, too, in the case at bar, Huston took title on November 21, 1975, from Wells free and clear of the unrecorded lien and subsequent events have no relevance. He was a "subsequent transferee" within the meaning of section 3—202(a). The trial court was correct in entering summary judgment for him.

Huber Pontiac makes a secondary argument that the trial court erred in dismissing Wells from the replevin suit. It is undisputed that Wells had sold the car and no longer had possession; therefore replevin, a possessory action, could not lie against him. Furthermore, the record does not demonstrate that Huber made any objection to the dismissal and therefore the point has not been preserved for review.

We turn next to the second question—whether any knowledge of Huston as to the existence of the lien will operate to preserve it. Since it is unnecessary to our decision, we express no opinion as to a general rule on this matter. The record in the case at bar shows clearly that Huston had no such knowledge on November 21, 1975. His deposition shows that on the date of sale he called his bank to check the value of the car, checked the serial number of the car with that on the certificate and checked Wells' social security number. Since Wells had a criminal record and was selling

the car at $1,500 to $2,000 less than the book value as reported by the bank, Huston's actions seem to us to be those of one suspicious of theft, not of unrecorded liens. Wells' deposition, which is part of the record, contains the following:

"Q Now, Mr. Wells, I would ask you to concentrate on your transactions with Mr. Huston where you were negotiating the sale of the title to this car. Did Mr. Huston bring up to you the question of there being some outstanding unpaid purchase consideration on the car?

A No I told him they sent me an open title to it so I was selling the car. The car wasn't paid for. He said it didn't make any difference as long as the title was clear and that I would be responsible for paying the loan. That's the way I felt about it too. I owed the bank whatever amount of money I owed them."

The trial court made no finding that Huston knew of the lien and its action was clearly correct.

We turn next to the related appeal concerning the administrative review of the action of the Secretary of State in revoking Huston's title.

At the outset, we are met with a troublesome problem. Huber Pontiac's appeal from the trial court's judgment was narrowly limited to the fact that the court did not assess costs against Huston. In its reply brief it attacks the jurisdiction of the trial court for failure of Huston to obtain summons in administrative review within 35 days of the administrative decision as provided in section 4 of the Administrative Review Act (Ill. Rev. Stat. 1975, ch. 110, par. 267). This is in violation of Supreme Court Rule 341(e)(7) (Ill. Rev. Stat. 1975, ch. 110A, par. 341(e)(7)), which states in part:

"Points not argued [in the brief] are waived and shall not be raised in the reply brief, in oral argument, or on petition for rehearing."

We would therefore be justified in considering the matter waived, but in an effort to put an end to this tedious litigation, to reach a just result, and to maintain a uniform and sound body of precedent, we will consider the points. *Hux v. Raben* (1967), 38 Ill. 2d 223, 230 N.E.2d 831.

First, as to the jurisdictional argument, the Secretary's decision was issued July 16, 1976. On August 20, 1976, Huston filed a complaint in administrative review in the circuit court and a motion to reconsider with the Secretary. The motion was denied on September 28, 1976, but notice of the denial was not served on Huston's counsel until December 17, 1976, according to his affidavit. No counteraffidavit was filed and we are therefore persuaded that December 17 is the correct date. The summons in the record bears the signature and seal of the clerk on January 17, 1977, and is therefore within the 35 days limited by statute. The trial court had jurisdiction.

The cost argument is patently frivolous. While the written order omits

the assessment of costs, the docket entry which is part of the record, does assess them against Huston.

On the merits of the administrative review, both the Secretary of State and the trial court were concerned with three things: (1) The security interest, (2) the failure of Huston to apply for a new title within 15 days as required by the Vehicle Code, and (3) deficiency in the notarization of the Wells' title. Both the Secretary and the trial court found no basis and insufficient evidence under point (1) and that the actions of Huston in that respect were not fraudulent. We agree.

However, both the Secretary and the trial court found points (2) and (3) were a sufficient basis for revoking the Huston title. We disagree.

■■ It is undisputed that Wells signed the title in blank on November 21, 1975, but that Huston did not cause it to be notarized and the notarization back-dated until some time later. While not in the least condoning Huston's actions, we do not perceive that the lack of notarization on November 21 in the least affected the intent of the parties to transfer. In a recent analogous case concerning gift (*State Farm Mutual Automobile Insurance Co. v. Lucas* (1977), 50 Ill. App. 3d 894, 365 N.E.2d 1329), this court held that the intent of the parties was the controlling factor and the notarization was only peripheral. Prevention of fraud and forgery are two of the reasons for the notarization and neither is present in this case. As indicated above, both the Secretary and the trial court found no fraud and it is undisputed that Wells signed the title. When the reason for it fails, the rule must also fail. The notarization was at best a technical violation.

■■ The other contested violation is the failure to obtain a new title within 15 days. It is again undisputed that Huston kept the title from Wells, endorsed in blank, in his safe from November 21, 1975, until January 20, 1976, when he "walked it through" the Secretary's office. Section 3—112(b) of the Vehicle Code (Ill. Rev. Stat. 1975, ch. 95½, par. 3—112(b)) requires that a transferee shall "promptly and within fifteen (15) days" after delivery of the vehicle apply for a new title. However, the failure to do so has been held to be only ordinary negligence. (*Forest Investment Corp. v. Chaplin* (1965), 55 Ill. App. 2d 429, 205 N.E.2d 51; *Mori v. Chicago National Bank* (1954), 3 Ill. App. 2d 49, 120 N.E.2d 567.) Even the latter cases held that other evidence in addition to the failure to obtain title was needed to establish negligence.

The powers of the Secretary of State are set forth in section 3—704 of the Vehicle Code (Ill. Rev. Stat. 1975, ch. 95½, par. 3—704). These are in part:

> "The Secretary of State may * * * revoke * * * a certificate of title, * * * in any of the following events:
>
> 1. When the Secretary of State is satisfied that * * * such certificate, * * * was fraudulently or erroneously issued;

* * *

5. When the Secretary of State determines that the owner has committed any offense under this Chapter involving * * * the certificate, * * * to be suspended or revoked; * * *."

We note first that as indicated above the hearing officer, the Secretary of State, and the trial court all found there was no fraud in this case; therefore, subsection 1 is inapplicable. The Vehicle Code does not define "offense," as it is used in subsection 5 above. However, the usual connotation of the work is a transgression of the law in a criminal sense. For example, section 2—12 of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 2—12) defines "offense" as a violation of a penal statute. We are hard-put to say that negligence in failing to meet a deadline is an offense.

A more fitting example would be the failure to disclose a security interest (Ill. Rev. Stat. 1975, ch. 95½, par. 4—105) which is a Class 4 felony (Ill. Rev. Stat. 1975, ch. 95½, par. 4—108). Clearly, this would be an offense.

In our view the Secretary of State overreached in revoking the certificate, gave a contorted meaning to "offense" and acted arbitrarily and capriciously. We are well aware that administrative determinations have a general air of sanctity about them and courts should be reluctant to interfere. However, when a manifest injustice appears, courts are not powerless to act.

An analogous situation arose in *Dorfman v. Gerber* (1963), 29 Ill. 2d 191, 193 N.E.2d 770. There the Department of Insurance revoked an agent's license for failure to remit premiums within the 90-day period. The supreme court found that the violation was only technical and that revocation of the license was an abuse.

In our view, the violation here was likewise only technical and the remedy applied was much too drastic and was an abuse of discretion by the Secretary of State.

Accordingly, in cause No. 14428, the summary judgment in favor of Huston in the replevin action is affirmed, and the motion for summary judgment in its favor filed in this court by Huber Pontiac is denied.

In cause No. 14540, the judgment of the circuit court of Sangamon County affirming the Secretary of State is reversed and the cause is remanded to the circuit court of Sangamon County with directions to remand it further to the Secretary of State with directions to set aside the revocation and issue a certificate of title to Huston.

Cause No. 14428 affirmed.

Cause No. 14540 reversed and remanded with directions.

REARDON, J., concurs.

Mr. PRESIDING JUSTICE GREEN, dissenting in part and concurring in part:

I dissent from the decision of the majority affirming the summary judgment in favor of Huston in case No. 14428. I concur in the reversal in case No. 14540 but would order that case remanded to the Secretary of State.

I cannot agree with the majority that the evidence before the court upon the motion for summary judgment shows conclusively that Huston had no knowledge that an unperfected purchase money lien was outstanding as to the car in question when he paid the purchase price of the car to Wells and received possession of the vehicle and the assigned certificate of title. As the majority recite, Huston knew that Wells, a convicted criminal, was selling the car at $1500 to $2000 less than its blue book value. Although not a dealer, Huston was somewhat knowledgeable about the business of selling cars. The disputed testimony of Wells that he told Huston that the car was not paid for is also before the court. A trial court cannot properly make findings of fact upon a motion for summary judgment. The issue is whether the point is proved as a matter of law. I conclude that based upon the foregoing evidence, a trier of fact could find that Wells was telling the truth and that Huston realized that a person selling a car to a convicted criminal like Wells would be unlikely to do so on an unsecured note and that the reason that Wells was selling the car at such a substantial discount was to obtain cash for the car before the seller's failure to perfect a lien was detected. If Huston's knowledge was a material issue, summary judgment was erroneous.

I further conclude that Huston's knowledge was material. The parties do not dispute that Huber failed to comply with the provisions of section 3—202 of the Illinois Vehicle Code which would have perfected its security interest. Subsection (a) states that upon failure to do so, the security interest is "not valid" against "subsequent transferees." Assuming arguendo, however, that, as the statute seems to state, knowledge of unperfected liens does not prevent a subsequent purchaser from being a subsequent transferee, we must examine the record to determine if Huston is shown to be a transferee.

The requirements for transfer of the ownership of a motor vehicle to or from one not a dealer are set forth in section 3—112 of the Code. Subsection (b) states that with exceptions not applicable here, a "transferee" shall, "promptly and within fifteen (15) days after delivery of the vehicle and the assigned title, execute the application for a new certificate of title" and mail or deliver the application to the Secretary of State. Subsection (e) states that, with exceptions also inapplicable, except "as between the parties, a transfer by an owner is not effective until the provision of this section * * * have been complied with."

The parties do not dispute that Huston made no application for new

certificate of title within the 15 days required by subsection (b) and in fact did not make the application for two months after receiving the car and the certificate of title from Wells. By the time Huston made application, the replevin suit had been filed and Huber had made demand on him for the car. I agree with the majority that Huston's failure to follow the requirements of subsection (b) was not of itself sufficient grounds for the Secretary of State to revoke the certificate of title issued to him. However, the section clearly indicates that the failure to comply with its requirements works a detriment to the violator. That detriment is that because the transfer is not complete as to third persons while the purchaser is in violation, that purchaser does not have the status of a transferee during that time.

The purpose of subsection (e) would be largely nullified if the noncomplying purchaser could wait until a third party sues and then comply. For this reason, I would rule that Huston was not entitled to the protection against unperfected liens given by section 3—202(a).

The Illinois Vehicle Code is silent as to the rights of a party not having the status of a transferee but who has given value for a vehicle with knowledge of a prior unperfected lien. Under these circumstances, the provisions of article 9 of the Uniform Commercial Code (Ill. Rev. Stat. 1975, ch. 26, par. 9—101 *et seq.*) control. (*South Division Credit Union v. Deluxe Motors, Inc.* (1976), 42 Ill. App. 3d 219, 355 N.E.2d 715.) Under section 9—301(1)(c) of the Uniform Commercial Code, a buyer of an automobile other than in the ordinary course of business, as here, takes free of unperfected security interest only if the purchaser is without knowledge of the unperfected interest.

Accordingly, I consider the question of whether Huston knew of the unperfected lien of Huber to be a material question of fact in the case. Because the evidence upon that fact was disputed, I would reverse the summary judgment and remand for further proceedings.

Although I agree that Huston's violation of section 3—112(b) of the Illinois Vehicle Code was of itself insufficient cause to revoke the certificate of title issued to him, I would remand that proceeding to the Secretary of State. A certificate of title may also be revoked if it was erroneously issued. (Ill. Rev. Stat. 1975, ch. 95½, par. 3—704(1).) Therefore, I would direct that the proceeding abide final determination in the replevin case and that if Huber recovers, the certificate of title be revoked but that otherwise the petition be denied.