CUDAHY, Circuit Judge.
This is an appeal by a putative secured creditor from an order of the district court affirming the decision of a bankruptcy judge requiring appellant First National Bank of Wood River to turn over to the trustee in bankruptcy $3,500, representing the value of a mobile home. The issue presented is the priority in bankruptcy between the holder of the security interest in the mobile home and the trustee.
On May 17, 1977, the bankrupt, Esther Keidel, borrowed $3,500 from the First National Bank of Wood River to finance the purchase of a mobile home. Keidel signed a security agreement with the Bank and executed a promissory note. She received from the Bank a check for $3,500 payable jointly to her, to Kenneth and Rose Mitchell (the sellers) and to Olin Employees’ Credit Union (the prior lienholder). When the check was issued by the Bank it was taken to the business office of the Credit Union, where the money changed hands, and various notations were made on the old certificate of title. The bankrupt was advised immediately to apply for a new certificate of title.
*173 The mobile home was purchased by the bankrupt from the Mitchells by assignment of the old certificate of title. The old certificate showed by notation the assignment, the release of its lien by the Credit Union and the existence of a security agreement in favor of the First National Bank of Wood River. The bankrupt attempted to apply for a new certificate of title but failed in (and finally desisted from) her efforts.
The petition in bankruptcy was filed on November 7, 1977. About one month later, the Bank delivered an application for a new certificate of title to the Secretary of State of Illinois. A new certificate was issued on December 15,1977. Subsequently, the trustee filed a complaint for turnover, which was sustained by the bankruptcy judge. The district court approved the bankruptcy judge’s order. We affirm.
Under Illinois law, security interests in personal property are, in general, governed by the Uniform Commercial Code as adopted in Illinois. Ill.Rev.Stat. ch. 26, § 9-101 ei seq. With respect to the means of perfection of security interests in motor vehicles (including mobile homes), however, the Illinois Vehicle Code exclusively controls. Ill. Rev.Stat. ch. 26, § 9-302(3)(b) and (4); Ill. Rev.Stat. ch. 95½, § 3-202(b); Huber Pontiac, Inc. v. Wells, 59 Ill.App.3d 14, 16 Ill.Dec. 518, 375 N.E.2d 149 (1978). Thus, the Illinois Vehicle Code provides that:
A security interest is perfected by delivery to the Secretary of State of the existing certificate of title, if any, an application for a certificate of title containing the name and address of the lienholder and the date of his security agreement and the required fee. It is perfected as of the time of its creation if the delivery is completed within 21 days thereafter, otherwise as of the time of the delivery. Ill.Rev.Stat. ch. 95V2, § 3-202(b).
In the instant case the old certificate of title and an application for a new certificate were not delivered to the Secretary of State until shortly before December 15, 1977. But the security interest of the First National Bank of Wood River was created on May 17, 1977, when the security agreement and the promissory note were signed. Ill.Rev.Stat. ch. 26, § 9-203(1) and (2); Peters on v. Ziegler, 39 Ill.App.3d 379, 350 N.E.2d 356 (1976). Therefore, since the security interest was not perfected within 21 days of its creation, it was not perfected until the application was delivered to the Secretary of State — well after the date of bankruptcy (Nov. 7, 1977). Ill.Rev.Stat. ch. 95½, § 3-202(b); South Division Credit Union v. DeLuxe Motors, Inc., 42 Ill.App.3d 219, 355 N.E.2d 715 (1976); Huber Pontiac v. Wells, supra. On November 7, 1977, therefore, the security interest of the Bank was unperfected.
But the trustee in bankruptcy came into the position of a lien creditor of the bankrupt (whether or not such a creditor actually existed) as of the date of bankruptcy— that is, on November 7, 1977. Bankruptcy Act § 70(c); 11 U.S.C. § 110(c).[1] The Illinois Vehicle Code, as of the date of bankruptcy, spells out the respective rights of holders of unperfected security interests and the trustee in bankruptcy (standing in the shoes of a lienholder) as follows:
. a security interest in a vehicle of a type for which a certificate of title is required is not valid against subsequent transferees or lienholders of the vehicle unless perfected as provided in this Act. Ill.Rev.Stat. ch. 95V2, § 3-202(a).
Hence, as of the date of the bankruptcy, the rights of the Bank, as the holder of an unperfected security interest, were subordinate to those of the trustee in bankruptcy, who stood in the position of a lien creditor or lienholder. Ill.Rev.Stat. ch. 95½, § 3-202; Peterson v. Ziegler, supra. This result illustrates the general rule that a lien creditor or lienholder (in whose shoes the trustee stands) prevails over the holder of an unperfected security interest but is defeated *174 by the holder of a perfected security interest. Under the Uniform Commercial Code, the rule, which is intended to reward diligence in perfection, applies even when the competing creditor has knowledge of the unperfected security interest. Cf. Ill.Ann. Stat. ch. 26, Comment to § 9-301 and Comment to § 9-312(5) (Smith-Hurd).
In the instant case, the First National Bank of Wood River failed to' perfect its security, interest by carrying out its statutory duty of “immediately [, after execution and delivery by the bankrupt, causing] the certificate, application and the required fee to be mailed or delivered to the Secretary of State.” Ill.Rev.Stat. ch. 95/2, § 3-203(b). In fact, such delivery to the Secretary of State did not take place until after bankruptcy. Hence, the interest of the Bank cannot be sustained against that of the trustee.
The Bank asserts that the certificate of title was never in its hands, but was surrendered to the bankrupt by the Credit Union. The Bank also claims that the bankrupt was fully instructed to secure the title. But none of these circumstances are of help to the Bank since the bankrupt was under a statutory duty to “cause the certificate, application and the required fee to be delivered to the lienholder [bank],” and the Bank could have enforced this requirement by making its performance a condition of advancing funds. Ill.Rev.Stat. ch. 951/2, § 3-203(a).
The Bank also argues that a portion of Section 67(c)(1) of the Bankruptcy Act, pertaining to the invalidity of statutory liens against the trustee in bankruptcy, somehow vindicates its position. 11 U.S.C. § 107(c)(1)(A) and (B). The statute in question provides, inter alia, that a statutory lien which is not enforceable at the date of bankruptcy against a bona fide purchaser from the debtor on that date is invalid against the trustee.[2] The Bank suggests, based on the cited provision, that a lien which is good against a bona fide purchaser is good against the trustee, citing In re J. R. Nieves & Co., 446 F.2d 188 (1st Cir. 1971). The argument continues that the lien of the bank in the instant case was valid against a bona fide purchaser because notice of the security interest was provided by the notation on the old certificate of title. The Bank cites Commerce Bank, N.A. v. Chambers, 519 F.2d 356 (10th Cir. 1975) for the proposition that under Kansas law, notation of a lien on a bill of sale is adequate to place a potential buyer or creditor (in whose shoes the trustee stands) on notice.
We reject these arguments. In the first place, the subsections of the Bankruptcy Act upon which the Bank relies are addressed to “statutory” liens. But the term “statutory lien” is defined to mean “a lien arising solely by force of statute upon specified circumstances or conditions, but shall not include any lien provided by or dependent upon an agreement to give security, whether or not such lien is also provided by or is also dependent upon statute and whether or not the agreement or lien is made fully effective by statute.” Bankruptcy Act, § 1(29a); .11 U.S.C. l(29a); Cf. In re Trahan, 283 F.Supp. 620 (W.D. La. 1968), aff’d., 402 F.2d 796 (5th Cir. 1969), *175 cert. denied, 394 U.S. 930, 89 S.Ct. 1189, 22 L.Ed.2d 459 (1969); Comment, Statutory Liens Under Section 67(c) of the Bankruptcy Act: Some Problems of Definition, 43 Tulane L.Rev. 305 (1969). The security interest of the Bank here is not a “statutory lien,” as defined in the .Bankruptcy Act; it is a consensual lien created by agreement between the bankrupt and the Bank. Hence, Section 67(c)(1) of the Bankruptcy Act, cited by the Bank, is not here relevant.
In the second place, the interpretation of the law of Kansas made by the Tenth Circuit, upon which the Bank relies, is quite different than the law of Illinois which governs the instant case. “The statutory scheme in Kansas clearly contemplates that it is the responsibility of the purchaser of a new vehicle to obtain [a] certificate of title, and the cases have so held.” Commerce Bank, N.A. v. Chambers, supra, at 358. In Illinois the statutory scheme reposes sole responsibility in the Bank to deliver the application to secure the certificate. Ill. Rev.Stat. ch. 95½, § 3-203(a), (b).[3]
The Bank contends that the result here produces a windfall for the bankrupt’s estate at the expense of the secured creditor, which furnished the purchase price of the mobile home. This may indeed be the result in this case, but the Bank has only itself to blame for failure to perform its statutory duty prescribing application for a new title. The Illinois law applicable to secured transactions in personal property, including motor vehicles, places strong emphasis on the need for diligence in perfection of the security interest in accordance with the statutory method. See Ul.Rev. Stat. ch. 26, § 9-301, ch. 95½, § 3-202. The strong policy favoring diligence in perfection (and the consequent gain in certainty and regularity) outweighs the possibility here of “unjust enrichment” or a “windfall.”
AFFIRMED.

. All citations are to the Bankruptcy Act of 1898 (as amended in 1966) which controls this case.

. (c)(1) The following liens shall be invalid against the trustee:
(A) every statutory lien which first becomes effective upon the insolvency of the debtor, or upon distribution or liquidation of his property, or upon execution against his property levied at the instance of one other than the lienor;
(B) every statutory lien which is not perfected or enforceable at the date of bankruptcy against one acquiring the rights of a bona fide purchaser from the debtor on that date, whether or not such purchaser exists: Provided, That where a statutory lien is not invalid at the date of bankruptcy against the trustee under subdivision (c) of Section 110 of this title and is required by applicable lien law to be perfected in order to be valid against a subsequent bona fide purchaser, such a lien may nevertheless be valid under this subdivision if perfected within the time permitted by and in accordance with the requirements of such law: And provided further, That if applicable lien law requires a lien valid against the trustee under Section 110(c) of this title to be perfected by the seizure of property, it shall instead be perfected as permitted by this subdivision by filing notice thereof with the court. 11 U.S.C. § 107(c)(1).

. Moreover, Kansas law has been amended to place the perfection of security interests in motor vehicles within the prerogative of the creditor, and the Tenth Circuit recently abandoned the rule of Commerce Bank. In re Kerr, 598 F.2d.1206 (10th Cir. 1979).