PER CURIAM.
 

 This is an appeal from an order of the district court affirming a bankruptcy
 
 *167
 
 judge’s order directing defendant-appellant Tony Robison to turn over a Mack truck to the trustee of his father’s bankrupt estate. The sole issue presented is whether the failure to comply with the provisions of the Illinois Motor Vehicle Code relating to the assignment and delivery of the certificate of title renders the purported transfer of a vehicle invalid as to a trustee in bankruptcy. We hold that it does not.
 

 I
 

 On or about May 15, 1978, Max C. Robi-son purchased a 1969 Mack truck. The purchase was financed with a loan from Kansas State Bank of Kansas, Illinois, in the amount of $8900.
 
 [1]
 
 In return for the loan, Robison signed a security agreement with the Bank and executed a promissory note. Due to the bank’s inadvertence, however, the security interest was never perfected, and on June 8, 1978, the Secretary of State of Illinois issued a certificate of title to Max C. Robison with no lien shown.
 

 Max Robison never made any payments on the note to Kansas State Bank. Shortly after his purchase of the truck, he entered into an agreement with his son, Tony, under which Tony was to take possession of the truck and assume responsibility for the payments as they became due.
 
 [2]
 
 Sometime in June of 1978, Tony went to the bank and explained the agreement to Michael Kern, the bank officer who had handled the original transaction for his father. After obtaining the approval of the bank president, Kern agreed to the change. But rather than draw up a new note and security agreement, Kern simply had Tony sign the existing note and security agreement that had previously been signed by his father. At the hearing before the bankruptcy judge, Kern explained that this was done so that Tony’s father would remain liable as a cosigner on the note. No new certificate of title was issued.
 

 Tony Robison then took possession of the truck and proceeded to lease it to Douglas Transit, Inc. Under the terms of the lease agreement, he was to drive the truck for Douglas, transporting general commodities throughout the state at its direction. He was to be paid a percentage of the gross amount earned on runs made with his truck. The lease was signed by both Tony and his father. His father was listed on the lease as the “registered owner” of the truck.
 

 During the remainder of 1978, Douglas Transit, Inc., paid Tony Robison $30,885 pursuant to the lease agreement. No money was paid to Max Robison. Also during this time, Tony made three payments on the note to Kansas State Bank and paid for all parts and repairs for the truck.
 
 [3]
 

 On November 3, 1978, Max C. Robison filed a voluntary petition in bankruptcy. He listed the 1969 Mack truck as an asset on his schedule in bankruptcy and declared his indebtedness to Kansas State Bank on the promissory note he had signed for it. On November 15,1978, the date of the first meeting of creditors, Max attempted to execute an assignment of the title to the truck to his son. On November 29, 1978, the bankruptcy trustee filed a petition for a turnover order, alleging that the purported transfer was null and void and that the truck was properly the property of the bankrupt estate.
 

 Following a hearing on the matter, the bankruptcy court issued an order granting the petition and directing Tony Robison to turn the truck over to the trustee. The bankruptcy judge based his ruling on section 3-112 of the Illinois Motor Vehicle Code, Ill.Rev.Stat. ch. 95V2, § 3-112. Under that section, the owner of a motor vehicle who transfers his interest in the vehicle other than by creation of a security interest
 
 *168
 
 is required to execute an assignment and warranty of title to the transferee on the certificate of title and to deliver the certificate to the transferee at the time of delivery of the vehicle. The transferee is then required to promptly execute the application for a new certificate of title on the certificate received by him and deliver it to the Secretary of State. Subsection (e) of § 3-112 states:
 

 (e) Except as provided in Section 3-113 and as between the parties, a transfer by an owner is not effective until the provisions of this Section and Section 3-115 have been complied with; however, an owner who has delivered possession of the vehicle to the transferee and has complied with the provisions of this Section and Section 3-115 requiring action by him is not liable as owner for any damages thereafter resulting from operation of the vehicle.
 

 Because the Robisons had failed to comply with this section prior to the date Max Robison filed his petition for bankruptcy, the bankruptcy judge concluded that a valid transfer had not occurred and title to the truck therefore vested in the trustee as of that date.
 

 The district court affirmed the bankruptcy judge’s order holding first that the evidence was sufficient to support his finding that no transfer had in fact occurred. The court then went on to hold that, even if a transfer of ownership had been made, it was not effective as to the trustee because of the parties’ failure to comply with section 3-112 of the Motor Vehicle Code.
 

 II
 

 The trustee argues in his brief that this court, like the district court, should affirm the turnover order on the ground that the bankruptcy judge’s factual finding that no transfer had occurred is sufficiently supported by the evidence. Rule 810 of the Rules of Bankruptcy Procedure requires reviewing courts to accept such findings “unless they are clearly erroneous... . ” The trustee contends that the bankruptcy judge’s finding of no transfer is not clearly erroneous in light of the record considered as a whole and that it should therefore be accepted by this court.
 

 The difficulty with this argument is that it does not appear that the bankruptcy judge made the finding which the trustee urges this court to accept. In granting the trustee’s petition for a turnover order, the bankruptcy judge did not state that the bankrupt had not in fact transferred ownership of the truck to his son, but rather that a
 
 valid
 
 transfer had not been made. Because the bankrupt had not executed an assignment of title and delivered the certificate to his son before he filed his petition for bankruptcy, the judge concluded that, as a matter of law, a valid transfer could not have occurred before that time. Thus, the question before this court is not whether there is sufficient evidence to support the bankruptcy judge’s factual findings, but whether he is legally correct in his conclusion that noncompliance with section 3-112 renders the attempted transfer of a motor vehicle ineffective as to a trustee in bankruptcy.
 

 On this issue, appellant contends that both the bankruptcy court and the district court erred in holding that noncompliance rendered the transfer invalid. He argues that both the plain language of section 3-112 and the Illinois cases applying it clearly show that compliance with that section is not essential to a valid transfer of a motor vehicle.
 

 We agree with appellant that under Illinois law an individual can effectively transfer his interest in a motor vehicle without complying with section 3-112. Subsection (e) of section 3-112 specifically states that a transfer is not effective “[ejxcept
 
 ... as between the parties . . .
 
 until the provisions of this Section ... have been complied with; ...” (emphasis added). As appellant points out, the obvious implication of this language is that, as between the parties, a transfer is effective even though compliance has not yet been achieved.
 

 The Illinois cases cited by appellant strongly support this interpretation.
 
 *169
 
 They hold that, as between the parties, the time of the passing of title to a motor vehicle is a question of their intent.
 
 Perry v. Saleda,
 
 34 Ill.App.3d 729, 737, 340 N.E.2d 314, 320 (1975);
 
 State Farm Mutual v. Lucas,
 
 50 Ill.App.3d 894, 8 Ill.Dec. 867, 365 N.E.2d 1329 (1977);
 
 County Mutual v. Aetna Life & Casualty,
 
 69 Ill.App.3d 764, 26 Ill.Dec. 207, 387 N.E.2d 1037 (1979);
 
 Ricke v. Ricke,
 
 130 Ill.App.2d 563, 264 N.E.2d 285 (1970). While the certificate of title issued by the Secretary of State may constitute evidence of this intent, it is not conclusive. Thus, as the court stated in
 
 State Farm Mutual v. Lucas, supra,
 
 50 Ill.App.3d at 898, 8 Ill.Dec. at 870, 365 N.E.2d at 1332, “[t]he Illinois rule is that the gift of an automobile can be effected without going through the Secretary of State’s Office and that the donee acquires title regardless of such formalities.”
 

 Applying these principles to the facts of this case, appellant contends that the evidence clearly shows that his father intended to and did transfer the truck to him in June of 1978. Because that transfer was effective as between the parties, he argues that it must also be effective as against the trustee since he merely “stands in the shoes of the bankrupt” and can have no greater right in the property than the bankrupt whom he represents. (Appellant’s Brief, p. 6.)
 

 On this point, however, appellant is clearly mistaken. For “[w]hile it is unquestionably true that the trustee [stands] in the shoes of the bankrupt, it is equally true that he [stands] in the overshoes of the creditors .... ”
 
 Schneider v. O’Neal,
 
 243 F.2d 914, 918 (8th Cir. 1957).
 
 See generally
 
 4B Collier On Bankruptcy, ¶ 70.45
 
 et seq.
 
 (14th Ed.). Under section 70(c) of the Bankruptcy Act,
 
 [4]
 
 11 U.S.C. § 110(c), the trustee occupies the position of a lien creditor of the bankrupt (whether or not such a creditor actually exists) as of the date of bankruptcy. Section 70(e) additionally empowers the trustee to set aside any transfer made or obligation incurred by the bankrupt which, under any applicable state or federal law, “is fraudulent as against or voidable for any other reason by any creditor of the debtor, having a provable claim under this Act....” 11 U.S.C. § 110(e). Thus, even though a previous transfer of property may be completely binding on the bankrupt himself, it may nevertheless be ineffective as to the trustee if state or federal law renders it so as to one in whose position the trustee stands.
 

 In this case, the trustee has not claimed the section 70(e) status of an existing creditor having a claim provable under the Act.
 
 Cf. Buttrey
 
 v.
 
 Merrill Lynch, Pierce, Fenner & Smith, Inc.,
 
 410 F.2d 135 (7th Cir. 1969).
 
 [5]
 
 His position is therefore that of the hypothetical lien creditor of the bankrupt, as of the date of bankruptcy, provided under section 70(c). The question this court must decide is whether the failure to comply with section 3-112 renders the transfer of a motor vehicle ineffective as to such a person under Illinois law.
 

 There is no Illinois case directly on point. Those decisions upholding a transfer, notwithstanding a failure to comply with section 3-112, have arisen almost exclusively in the context of a dispute between automobile liability insurers over whose insured owned the vehicle at the time of an accident. In that context, the Illinois courts have consistently held that the “as between the parties” exception of subsection (e) applies and that noncompliance does not prevent a valid transfer from occurring.
 
 See State Farm Mutual v. Lucas, supra,
 
 and cases cited therein. These cases are clearly not applicable here, however, where the question is whether noneompliance renders the transfer ineffective as to a lien creditor.
 
 [6]
 

 
 *170
 
 On its face, section 3-112(e) does not seem to distinguish among the other persons as to whom noncompliance renders a transfer of a motor vehicle ineffective. The only exception expressly stated to the general rule that the failure to comply renders the transfer ineffective is “as between the parties” themselves. Since the trustee, as a hypothetical lien creditor of the bankrupt as of the date of bankruptcy, occupies a position separate and distinct from the bankrupt, this language does not apply to him. But this fact does not end our inquiry. For even though a lien creditor is not expressly excluded from the class of persons as to whom noncompliance renders the transfer ineffective, it is also true that this type of creditor is not expressly included within that class either.
 

 In
 
 Echols v. Olsen,
 
 63 Ill.2d 270, 347 N.E.2d 720 (1976), the Illinois Supreme Court stated in an analogous context with respect to a similarly worded statute, section 54 of the state Torrens Act, Ill.Rev. Stat. ch. 30, § 98 (1973) (repealed 1980), that it would not interpret that statute as conferring on a judgment lien creditor priority over an unrecorded conveyance in the absence of express statutory language which specifically so provided. At issue in that case was the validity of a bank’s judgment lien on a parcel of property which its debtor had previously conveyed, pursuant to a divorce decree, to his former wife. Although the former wife had recorded her deed in the office of the Cook County Recorder of Deeds as required by the State’s Conveyance Act, Ill.Rev.Stat. ch. 30, § 1
 
 et seq.,
 
 she had failed to register it in accordance with the Torrens Act with the County Registrar of Titles. In the meantime, the bank obtained a default judgment against her ex-husband and had it memorialized on the Torrens certificate in the Registrar’s office, thereby creating a lien on the property.
 

 The wife then petitioned the court to direct the Registrar to remove the bank’s memorial and issue a new certificate showing title to be in her name alone. In opposition to the petition, both the Registrar and the bank argued that, under the state Torrens Act, a judgment creditor who memorializes his judgment after the judgment debtor has conveyed his interest in the property acquires an interest superior to that of a prior transferee who failed to register his deed. In support of their argument, they cited section 54 of the Act, which at that time stated that a “... deed ... purporting to convey ... registered land .. . shall take effect only by way of contract, between the parties thereto, and as authority to the registrar to register the transfer ...” and that “[o]n the completion of such registration the land shall ... become transferred ... according to the purport and terms of the deed.... ” On the basis of this statute, they argued that the wife’s failure to properly register her deed prevented the conveyance from taking effect and that the bank’s lien was therefore valid.
 

 The Illinois Supreme Court, stating that the language of the Torrens Act was unclear on the issue, rejected this contention. The Court noted that section 30 of the Conveyance Act with which the petitioner had complied specifically states that a deed shall be void and of no effect “as to all creditors and subsequent purchasers, without notice ... until the same shall be filed for record” in the County Recorder’s office. Ill.Rev.Stat. ch. 30, § 29. It refused to read this provision into the Torrens Act, however, stating
 

 
 *171
 
 To do so would be an egregious intrusion upon the legislative authority. The Torrens Act was designed by the legislature to protect intending purchasers
 
 (People v. Mortenson,
 
 404 Ill. 107 [88 N.E.2d 35];
 
 Balzer v. Pyles,
 
 350 Ill. 344 [183 N.E. 215];
 
 In re Bickel,
 
 301 Ill. 484 [134 N.E. 76];
 
 Hacken v. Isenberg,
 
 288 Ill. 589 [124 N.E. 306]), and has never been considered to extend the preference to judgment creditors. Judgment creditors under section 30 are preferred to holders of prior but unrecorded interests only because of that statute. Section 30 existed prior to the Torrens Act and it is not unreasonable to say that had the legislature intended that judgment creditors receive under the Torrens Act the priority and preference they are given under section 30 it would have inserted a provision in the Torrens Act similar to section 30.
 

 The court also noted that the construction urged by the bank and the Registrar was contrary to the general rule in Illinois that a judgment creditor’s lien extends “only to the actual interest of the judgment debtor in the property (citations), and that this interest will not be extended to allow him to claim property of another in satisfaction of his lien in the absence of a statute specifically giving him this right (citations).”
 
 Id.
 
 at 277-78, 347 N.E.2d 720. Moreover, because a judgment creditor is generally not one who has relied to his detriment on the registered state of the title, the court rejected the Registrar’s argument that such a creditor should prevail as a matter of equity.
 

 In our view, section 3-112 of the Illinois Motor Vehicle Code is
 
 in pari mate-ria
 
 with section 54 of the Illinois Torrens Act and must therefore be construed consistently therewith. Statutes are held to be
 
 in pari materia
 
 “when they relate to the same person or thing, or to the same class of persons or things, or have the same purpose or object.” 2A Sands, Sutherland Statutory Construction, § 51.03 (4th Ed. 1973). The purpose of section 3-112, like that of Torrens Act, is to protect intending purchasers.
 
 See Huber Pontiac, Inc. v. Wells,
 
 59 Ill.App.3d 14, 18, 16 Ill.Dec. 518, 375 N.E.2d 149 (1978) (“Illinois, like other States, has erected an elaborate system of title transfer for automobiles which has as one of its purposes, among others, the elimination of the ancient and outmoded doctrine of
 
 caveat emptor,
 
 at least insofar as the condition of the title is concerned.”). To accomplish this goal, it requires the transferee of an automobile to register the automobile in his name, just as the transferee of an interest in real property is required to register the land in his name under the Torrens Act.
 

 In light of these facts, we think the Illinois Supreme Court’s construction of section 54 of the Torrens Act in
 
 Echols v. Olsen, supra,
 
 applies equally to section 3-112(e).
 
 [7]
 
 The pertinent language of the two provisions is substantially the same. Each states essentially that an attempted transfer or conveyance does not take effect generally until properly recorded. Although neither expressly excludes lien creditors from the class as to whom an unrecorded transfer is ineffective, the Illinois Supreme Court held in
 
 Echols
 
 that it would not regard judgment lienholders as members of the protected class in the absence of express statutory language including them. Since such express statutory language is lacking here as well, the same conclusion follows.
 

 We therefore hold that the bankruptcy judge erred in concluding as a matter of law that the bankrupt’s failure to comply with the provisions of section 3-112 rendered the purported transfer of his Mack truck to his son invalid as to the trustee. Accordingly, the case is reversed and remanded for further proceedings consistent with this decision.
 

 [1]
 

 . The exact purchase price for the truck does not appear in the record.
 

 [2]
 

 . There was testimony to the effect that Max Robison had suffered a series of heart attacks prior to this time, and that this was the reason for his son taking over the truck.
 

 [3]
 

 .At the hearing before the bankruptcy judge, Tony produced invoices and cancelled checks showing that he paid for tires, clutch, sleeper box, batteries, voltage regulator, a water pump, and other parts and repairs. He also paid $535 to have the truck licensed.
 

 [4]
 

 . Citations are to the Bankruptcy Act of 1898 (as amended in 1966), which controls this case.
 

 [5]
 

 . Nor has the trustee challenged the purported June transfer of the vehicle as fraudulent as to any creditors or made in contemplation of bankruptcy such that it would be voidable under section 67 of the Act, 11 U.S.C. § 107.
 

 [6]
 

 .Nor is this court’s decision in
 
 Matter of Keidel,
 
 613 F.2d 172 (7th Cir. 1980), applicable. In
 
 *170
 
 that case, the court held that where a bank failed to perfect Its security interest in a mobile home by having it recorded on the certificate of title as required under section 3-202(b) of the Illinois Motor Vehicle Code (Ill.Rev.Stat. ch. 95V2, § 3-202(b)) prior to the date of bankruptcy, its security interest was invalid as against the trustee of the owner’s bankrupt estate. In reaching this result, the court relied on section 3-202(a) of the Motor Vehicle Code, which specifically states:
 

 ... a security interest in a vehicle of a type for which a certificate of title is required is not valid against subsequent transferees or lienholders of the vehicle unless perfected as provided in this Act.
 

 Ill.Rev.Stat. ch. 95‘/2, § 3-202(a). This section does not apply in this case where the interest claimed by appellant is not that of a secured creditor but of a prior transferee.
 

 [7]
 

 . Although section 54 of the Torrens Act has since been repealed, this fact does not change our analysis. The section was repealed as part of the general revision of the Torrens Act which became effective January 1, 1980. The substance of former section 54 is now contained in section 49 of the Act, Ill.Rev.Stat. ch. 30, § 93.