NICHOLS, SHEPARD & CO. (A CORPORATION) v. ELON A. MARSH, MINARD LA FEVER, AND JAMES SCOTT.

| 61     509|
| s28NW 699|
| D140US 344|
| D35Led 413|
| D118C 798|

*Jurisdiction—Exclusively in federal courts where validity of patent right is involved—Suit to enforce an agreement for the use of an invention may be prosecuted in State court—Notwithstanding pending suit in federal court, in favor of patentee, for alleged infringement by such use—Such agreement need not be in writing—But if fully executed by licensee, is for that reason valid—On facts in this case (see opinion) complainant held entitled to the relief asked for.*

1. A patentee brought suit in the *federal* court for an alleged infringement of a patent. The defendant, in its answer, alleged its invalidity, and put the invention in issue, but did not set up a license to *use* the same. A decree was rendered adverse to the patentee on the ground that the patent had never been issued and signed and sealed by the proper officer, whereupon the defendant filed a bill in the State court to compel the patentee to convey to it the right to *use* the invention as per an alleged verbal agreement between the parties. An appeal was taken from the decree in the infringement suit to the United

States Supreme Court, pending which the patentee filed a second bill for the same infringement, having had his patent perfected.

*Held*, that the suit in the *State* court not being brought to determine any question arising under the patent laws, but merely to enforce a contract to transfer an inventor's right, was not one in which the United States courts have particular jurisdiction, all of the parties being citizens of Michigan.

*Held*, further, that the bill filed by the patentee being one strictly under the patent laws, and the only issues raised by the defendant being under such laws, it was not estopped from bringing its suit in the State court by such prior litigation, in which it was not called upon to make any defense which admitted the validity of the patent, which was *then* invalid; nor can it be deprived of the right to vindicate in another suit such rights as could not have been adequately enforced in the *prior* litigation.

2. Questions touching the legal validity of patented rights belong to the United States courts, and will not be considered by this Court.

3. A corporation engaged in the manufacture of engines agreed with a patentee to allow him to attach an alleged improvement to an engine about to be placed on exhibition at county fairs, he to accompany the same, and thus introduce his invention to the public; in consideration of which assistance the corporation was to have the right to use the improvement on its engines, without further compensation. The arrangement was carried out by the corporation, but in a suit afterwards brought by it to compel a conveyance of such right, the patentee denied the validity of said agreement because not reduced to writing.

*Held*, that there is no law rendering such a license void if unwritten; but as it was *fully* executed by the corporation, it is entitled to rely upon it for that reason, if otherwise defective.

*Held*, further, that the case is one calling for equitable relief, and that a conveyance of the right contracted for will be decreed in favor of the corporation.

Appeal from Calhoun. (Hooker, J.) Argued May 6 and 7, 1886. Decided June 10, 1886.

Bill filed to compel conveyance of right to use an invention. Defendants appeal. Affirmed. The facts are stated in the opinion.

*Charles F. Burton*, for complainant.

*R. A. Parker* (*Don M. Dickinson*, of counsel), for defendants.

CAMPBELL, C. J. This bill was filed to compel defendants

to convey to complainants, who are a corporation engaged in engine building at Battle Creek, the right to use a certain improvement, consisting of a reversing apparatus, for which defendants claim to own a patent, and for the principal part of which it is admitted they are entitled to have one.

In the summer of 1880, complainants were engaged in building engines intended for farm work, and self-propelling; and, as the season of fairs was approaching, they were preparing one to exhibit. Defendant Marsh, who is a skilled mechanic, and had worked more or less for complainants, had devised what he regarded as a great improvement in reversing gear, and was anxious to have it put to a practical test in such a way as to bring it before the public. He showed it to Mr. Nichols, the active man of the concern in that department, and desired to be allowed to fit it to the engine which was to be exhibited. Mr. Nichols thought favorably of the device, and was willing to co-operate. The change required to adapt the engine to the new reversing device made necessary some changes in the steam-chest, and some other alterations. All this was done in the shop, partly by the shop-hands, and, when completed, the engine was painted, and put in order for the fairs. Marsh was sent with it, in company with complainants' agent, and was paid wages and expenses. The engine was exhibited at several places to a large number of people, and shown at work, and consequently Marsh and his associates, the other defendants, who became interested with him, received orders and made sales of the right to use the device to a considerable amount.

When the arrangement was made with complainants, Marsh had applied for a patent, which was subsequently allowed by the patent-office. The device, as so patented in the outset, did not contain certain arrangements found necessary for its perfect working, and these were added while work was going on to fit out the engine. There is a dispute whether these improvements were invented by Marsh, or by Mr. Hoag, one of complainants' workmen, who claims to have noticed the defect in the apparatus while working at it, and to have devised the remedy. Hoag obtained a patent for

it. Marsh afterwards applied for one, and, in the conflict concerning interference, the Washington officials decided in his favor, and complainants, as Hoag's assignees, filed a bill in equity in the supreme court of the District of Columbia to have the matter judicially settled.

Complainants claim that when they allowed Marsh to adapt his device to their engine, and furnished him aid in so doing in the shop and in the exhibition, it was agreed that they should have the right to use it, without further compensation, on their own engines. This is the agreement in issue here. Defendants deny any such arrangement, and claim that complainants have no right whatever to use it. Complainants began at once to fit out their engines with the device, and the testimony shows clearly that defendants were enabled to get their invention adopted by the representation that complainants had adopted it.

In addition to denying the right of complainants, defendants also rely on the fact that they, subsequently to the allowance of the patent, filed a bill against complainants in the circuit court of the United States for the Eastern district of Michigan, charging an infringement, and complainants set up in defense the invalidity of the patent, and put the invention in issue, but did not set up license. This suit was defeated on the ground that the patent had never been issued and signed and sealed by the proper officer. (15 Fed. Rep. 914.) An appeal was taken by defendants, and also by complainants, to the United States Supreme Court, where it is now pending.

The present suit was begun before that case was appealed. Subsequently another suit was brought in the same court, relying on a correction of the patent. That suit, being later than the present, cannot affect this proceeding, and need not be further considered.

The suit now before us, not being brought to determine any question arising under the patent laws, but merely to enforce a contract to transfer an inventor's right, is not one in which the courts of the United States have particular jurisdiction. All parties are citizens of Michigan. There is

nothing, therefore, to prevent the maintenance of this suit, unless the two suits are so nearly identical that this creates a double vexation. Questions touching the legal validity of patented rights belong to the courts of the United States, and we do not propose to consider any such question.

The bill filed by defendants was strictly a bill under the patent laws, and nothing else. The only issues raised by complainants there were such issues. It is very questionable whether such a bill as the present could have been so framed as to stand as a proper cross-bill, as it rests on a claim which is not hostile to the patent. As an original bill it is not claimed that it could have been filed there between these parties.

We do not think that complainants are estopped by that litigation. If defendants had not then obtained a good patent, complainants were not called on to put in any defense which admitted one; and they cannot be deprived of the right to vindicate in another suit such rights as could not have been adequately enforced in that litigation.

Although defendant Marsh denies the arrangement set up by complainants, the proof is very convincing to the contrary. The invention was not one which was known to be of much value, and an interest in it was sold very cheap to one of the co-defendants. Complainants expended more, in proportion, for their limited right to use the device in their own shop, than was paid for the interest in the entirety. It was of great value to Marsh to have his invention recognized and used by a firm of established reputation for good work, and he made important sales on the faith of complainants' adoption of it, which would have been a deceptive representation if they were not acting with his approval. It is positively sworn by witnesses whom we believe that Marsh admitted he made the arrangement charged, but regarded it as void because not reduced to writing.

We have not discovered any law which makes such a license void if unwritten. But in the present case the agreement was fully executed by complainants, and they are entitled to rely upon it on that account, if otherwise defec-

61 Mich.—33

tive. It was perfectly definite in its terms, and entirely fair. There is no reason why they should lose the benefit of it.

We think the case is one where relief should be given in equity. While defendants hold the patent, no one will feel safe in buying an engine with their device attached, at the risk of a lawsuit. Their open and notorious denial of complainants' rights has a necessary tendency to prevent sales and discredit them. Without a written license, they can never have the means of rebutting these charges. Defendants, having shown a disposition to interfere with them, should be compelled to give them written evidence of the right which they have bought and paid for.

The court below having so held, the decree must be affirmed.

SHERWOOD and MORSE, JJ., concurred. CHAMPLIN, J., did not sit.