## PRESS PUB. CO. v. FALK et al.

(Circuit Court, S. D. New York. January 12, 1894.)

1. COPYRIGHT—PHOTOGRAPHS—PUBLIC CHARACTERS.

One who photographs an actress in her public character, free of charge, with the understanding that she is to have as many photographs as she desires, to do with as she may please, is the owner of the photograph and negative, and has the right to secure a copyright for his own exclusive benefit; and her right does not extend to making copies, or permitting others to do so for their own benefit.

2. SAME—AUTHORITY OF EQUITABLE PART OWNER.

Even if the photograph were taken under such circumstances as to give her an equitable interest in the photograph and copyright, she would have no authority to permit another to make copies for his own benefit, without consent in writing, as required by the statute.

In Equity. Suit by the Press Publishing Company to restrain Benjamin J. Falk and another from prosecuting an action at law for infringement of a copyright for a photograph, and other relief. Bill dismissed.

John M. Bowers, for orator.

Benno Lewinson and Edwin T. Taliaferro, for defendants.

WHEELER, District Judge. The orator is the publisher of the New York World; the defendant Falk is a well-known photographer, of the city of New York; and the defendant Johnson, a prominent actress, well known by her theatrical name, "Marie Jansen." He had taken several photographs of her, as a public person, in stage costumes and positions, and took one of her as she appeared in "Nadjy," and copyrighted it. The orator published a sketch of her career in its Sunday edition, and illustrated it with cuts made fom photographs furnished by her, and, among others, with one from this photograph, copyrighted by the defendant Falk, without including the notice of copyright. The law provides that if any person shall, after the copyrighting of a photograph, without the consent of the proprietor first obtained, in writing signed in the presence of two witnesses, publish the same, he shall forfeit to the publisher every sheet thereof, and further forfeit one dollar for every sheet of the same found in his possession. Rev. St. U. S. § 4965; Lithographic Co. v. Sarony, 111 U. S. 53, 4 Sup. Ct. 279. The defendant Falk has brought suit on the law side of this court against the orator, to recover these penalties, alleging the printing of 260,-183 copies, of the value of $13,009.15, found in the orator's possession, and the forfeiture of $1 each, amounting to $260,183. This suit is brought to restrain prosecution of that suit, on the right of the defendant Johnson to publish copies of the photograph, and to authorize the orator to do the same.

Obviously, no question arises here as to the legality of the copyright, or as to any defense which the orator could make at law. That litigation could not be brought from the law side to this side of the court. The sole question is as to whether the orator acted upon some equitable right, which could not be set up as a defense

at law. The bill, as to this, alleges that a photograph of her had been copied into a misrepresentation and caricature of her, of which she spoke to him, whereupon he said he could protect her from being thus misrepresented and caricatured, and protect himself in the sale of the photographs; that she assented to this, and requested him to procure copyrights of such photographs as he might take of her, which he stated were to be taken out by him, and used for their joint benefit and protection, and that she could use, and authorize the use of, the same, as she deemed best and for her interest. The answer sets up, as to this—

"That he obtained a copyright therefor, in due form of law; that said defendant Johnson had and has no right, title, or interest in or to said photograph, nor the copyright thereof, either adverse to this defendant or otherwise; that if said copyright was taken out by this defendant, to be used by him and said defendant Johnson for their joint benefit and protection, then, as this defendant is advised and verily believes, said defendant Johnson had no right or power to impair or destroy this defendant's rights and interests therein by authorizing, directing, or permitting a publication of said photograph in such manner as would constitute an abandonment or destruction of this defendant's rights therein."

### As to these points, she testifies:

"Q. 21. Did you assent or object to this proposition? A. I expressed myself as pleased that I should see no more bad printing of myself, and there it dropped." "Q. 23. What was to be Mr. Falk's interest in such photographs? A. We never discussed that. His interest, I suppose, was to be the same as before." "Q. 26. Who was to have the profit of selling them? A. Mr. Falk. Q. 27. Just state your rights. A. That I was to have all the pictures I desired, to do with as I chose, free of charge." "X-Q. 118. Didn't he have the right of selling your pictures, even without copyrighting them? A. Certainly. X-Q. 119. Don't you know, Miss Jansen, that there is a custom which controls the dealings of the theatrical profession and the photographic art, where sitters have their pictures taken without charge to them, or at a reduction from the regular rates,—that the photographer has the right to sell the pictures, for his own benefit, to the public? A. Yes, I know of such a courtesy. X-Q. 120. Don't you know that is the custom? A. Yes. X-Q. 121. You never paid for having your pictures taken, did you, at Mr. Falk's? A. No, sir."

### And he testifies:

"Q. 55. Had Marie Jansen any authority to authorize the publication of the copyrighted pictures? A. No, sir. Q. 56. Did you give her any authority, of any kind? A. No, sir. Q. 57. Was there any agreement between you, whereby she had any such authority? A. No, sir." "Q. 70. Miss Jansen testified, in answer to cross-interrogatory 119, that it is the custom, when a photographer takes pictures without charge, that he has the right to sell the pictures for his own benefit to the public. Is that the custom? A. It is."

When a person has a negative taken and photographs made, for pay, in the usual course, the work is done for the person so procuring it to be done, and the negative, so far as it is a picture, or capable of producing pictures, of that person, and all photographs so made from it, belong to that person; and neither the artist nor any one else has any right to make pictures from the negative, or to copy the photographs, if not otherwise published, for any one else. Pollard v. Photographic Co., 40 Ch. Div. 345; Moore v. Rugg, 44 Minn. 28, 46 N. W. 141. But when a person submits himself or herself as a public character, to a photographer, for the taking of a

negative, and the making of photographs therefrom for the photographer, the negative, and the right to make photographs from it, belong to him. He is the author and proprietor of the photograph, and may perfect the exclusive right to make copies by copyright. Lithographic Co. v. Sarony, 111 U. S. 53, 4 Sup. Ct. 279; Falk v. Engraving Co., 48 Fed. 262, and, on appeal, 4 C. C. A. 648, 54 Fed. 890. Obviously, on these pleadings and proofs, the negative was not made for Miss Johnson; and she was not, and is not claimed to have been, a customer of the former class. That she was the subject of the picture would not, alone, make it hers. The right to it would depend upon for whom the work was done, and the evidence shows that what Mr. Falk did was done for himself. That she was to have as many of the photographs as she wanted, to do with as she pleased, did not affect his exclusive right to make other copies. The owner of a copyrighted book would have the same right to it that she had to these photographs, which would not, in either case, extend to making copies, and, more clearly, not to giving others the right to make them. With such a right outstanding, nothing would be left of the copyright.

If, however, by any understanding which could be implied out of the circumstances, she could be said to have any equitable ownership here, it would be of a copyright, of which she would be, to the extent of her interest, a proprietor. He would be the proprietor of what remained, if anything, and the holder of the legal title to the whole. The statute works these forfeitures for publishing copies without the consent of the proprietor first obtained, in writing signed in the presence of two witnesses. Here is no pretense of any consent in writing from both or either. Had she been the publisher of the World, or so procured the publication of the article containing these copies that it would have been hers, such an equitable right would doubtless have protected her, and others employed by her, within the principle of the cases cited for the orator. Lawrence v. Dana, 2 Amer. Law T. Rep. (N. S.) 402; Wallerstein v. Herbert, 16 Law T. (N. S.) 454; Nichols v. Marsh, 61 Mich. 509, 28 N. W. 699; Id., 140 U. S. 344, 11 Sup. Ct. 798. As to her part in procuring the publication, the writer for the World testifies:

"Q. 10. What led you to call at Miss Jansen's? A. I was sent to write a story about Miss Jansen by the editor of the Sunday World." "R. D. Q. 102. Miss Jansen gave you the pictures, with permission to use them? A. She did. R. D. Q. 103. Did she give you those pictures? A. She did. R. D. Q. 104. Did she give you permission to use them? A. She did. R. D. Q. 105. And did you rely on that permission? A. Yes, I did."

And Miss Johnson testifies:

"Q. 62. And you assented to his publishing what he did publish? A. I did. Q. 63. Was your motive pure information to the World, or had you an idea that it would promote your own interests, or was it both? A. Both."

This shows clearly that the publication was made by the orator in the World for, itself, on its own procurement, and not for her on hers; and, so far as anything about it derived from her was concerned, they acted and relied upon her consent. A part owner could not effectually give this without writing, as required by the

statute, any more than a sole owner could, nor an equitable owner more than a legal owner. Neither is such a statute, which is essentially like the statute of frauds, any less binding in equity than at law. 2 Story, Eq. § 754; Randall v. Howard, 2 Black, 585; May v. Sloan, 101 U. S. 231. No right available to the orator as a defense in equity, and not at law, is made to appear, and the orator must therefore be left to make defense at law.

Let a decree be entered, dismissing the bill, but without prejudice to any defense at law.