(No. 24973.— )

THE ACME PRINTING INK CO. *et al.* Appellants, *vs.* S. L. NUDELMAN, Director of Finance, *et al.* Appellees.

*Opinion filed February 20, 1939—Rehearing denied April 12, 1939.*

FRANKLIN J. STRANSKY, for appellants.

JOHN E. CASSIDY, Attorney General, (MONTGOMERY S. WINNING, and MARTIN PHILIPSBORN, JR., of counsel,) for appellees.

Mr. JUSTICE ORR delivered the opinion of the court:

The issue is whether the provisions of the Retailers' Occupation Tax act apply to manufacturers and distributors of printing ink. Plaintiffs filed a class suit in the circuit court of Cook county to enjoin the Director of Finance and the Attorney General from requiring them and others similarly situated to pay such a tax on sales of printing ink.

The bill also sought to restrain application of certain rules and regulations of the Department of Finance. The circuit court denied the injunction and dismissed the bill for want of equity. The appeal comes directly to this court because the revenue is involved and the State is an interested party.

Plaintiffs are engaged in the business of manufacturing and selling ink to printers and lithographers (1) for the printing of standard and salable articles of commercial value, and (2) for the printing and lithographing of material on special order which, when completed, is of no value except to the persons for whom the work is done. When the Retailers' Occupation Tax act went into effect in July, 1933, the Department of Finance ruled that the sale of ink to printers and lithographers for either of these purposes did not subject the business of plaintiffs to a tax under the act. In October, 1936, the department amended its rule (36) to make plaintiffs liable for a tax measured by receipts from the sale of ink used in the second class of printing and lithographing enumerated above, which it designated as printed matter of no commercial value. The bill of complaint alleges that the Director of Finance and the Attorney General threaten to sue plaintiffs to recover a tax measured by such receipts from July 1, 1933, to the present time, and to apply in said suits article 14 and rule 23 of the rules and regulations of the Department of Finance.

The first question is whether sales of printing ink by these manufacturers to printers and lithographers are sales at retail within the meaning of the act. Section 1 defines a "sale at retail" as "any transfer of the ownership of, or title to, tangible personal property to the purchaser, for use or consumption and not for resale in any form as tangible personal property, for valuable consideration." The contention of the printing ink companies is that the ink sold to printers and lithographers is not used or consumed but

is resold in another form as an integral part of the printed matter. The act cannot be so narrowly construed. The printers and lithographers are the users or consumers of the printing ink in the production of printed matter. In *Herlihy Mid-Continent Co. v. Nudelman,* 367 Ill. 600, we held that contractors constructing sewers and sewage treatment plants were not selling the sand, gravel, cement and reinforcing steel which were incorporated in the completed structures, but were *using* those materials. We there pointed out that "the identity of the materials used in the construction was destroyed." Similarly, when printers and lithographers employ the ink purchased from the plaintiffs in the production of printed matter the ink loses forever its capacity to serve as a means of reproducing type on paper, cloth or other surface. (See *Adair Printing Co. v. Ames,* 364 Ill. 342.) Since ink once used in printing, just as cement used in concrete, can never be used again for that purpose, it has been consumed within the meaning of the statute. (*Revzan v. Nudelman,* 370 Ill. 180.) Too much emphasis should not be placed upon the words of section 1 "not for resale in any form" for if the ink has been consumed in the process of printing it cannot then be said that it is at the same time capable of resale or transfer. Plaintiffs rely on *Bradley Supply Co. v. Ames,* 359 Ill. 162, where we held sales of plumbing and heating fixtures by supply houses to contractors were transfers for resale and not for use or consumption. That case is clearly distinguishable. There the fixtures did not lose their identity in the hands of the contractors and when installed for use of the ultimate purchasers retained their original form and served the purpose for which they had been originally designed.

It is further claimed that printing ink companies are not subject to the occupation tax because they are engaged in a highly specialized service similar to optometry (*Babcock v. Nudelman,* 367 Ill. 626) or the graphic arts (*Burgess*

*Co.* v. *Ames,* 359 id. 427) or commercial printing (*Adair Printing Co.* v. *Ames, supra*) or electrotyping (*A. B. C. Electrotype Co.* v. *Ames,* 364 Ill. 360.) They point to the fact that eighty-five to ninety-five per cent of printing ink is furnished on special order of printers and lithographers to meet their particular requirements; that they conduct laboratories for the testing of inks on various surfaces; that more than 350 kinds of materials are used in compounding the various types of ink; and that approximately 10,000 different colors of printing ink are produced and sold annually. While all of this may be true, the distinguishing feature of the cases relied upon is that the skill and services rendered far outweighed the value of the materials in the articles sold. Thus in *Burgess Co.* v. *Ames, supra,* we said: "The paper is a mere incident; the skilled service is that which is required." In the present case, however, printing ink furnished in bulk quantities is tangible personal property, in which personal service, skill and artistic ability have entered only to a comparatively small degree such as is found in most competitive trades and businesses. The record shows that only about ten per cent of plaintiffs' employees are required in the technical and scientific departments and that the mixing and processing of inks requires no greater degree of technical learning and ability than any other trade processes. The primary occupation of plaintiffs is not the rendering of service but is the manufacture and sale of printing ink.

In paragraphs 3 to 7, inclusive, of the complaint, plaintiffs described, in detail, the types of printing executed by the printers and lithographers to whom they sell printing ink. They ask us to decide which of these products are of commercial value and which are of non-commercial value. There is no occasion to consider that question in this suit. The Department of Finance and the Attorney General threaten to assess a tax on plaintiffs' business measured

only by the sales of printing ink used for production of material of non-commercial value. This we have found they are entitled to do. If, in making the assessment, non-taxable sales are included, the statute provides a remedy for the printing ink companies. (Ill. Rev. Stat. 1937, chap. 120, par. 451.) This court cannot anticipate that the Department of Finance will violate the law. The questions raised by these paragraphs of the complaint are prematurely presented for judicial decision.

Article 14 and rule 23, both promulgated pursuant to the power of the Department of Finance to issue necessary rules and regulations, are also sought to be enjoined. These rules have been set up by the department to assist in determining the amount of tax to be assessed against occupations within the scope of the act. While it was stipulated by the department that no occupation taxes were due from plaintiffs prior to October, 1936, yet no assessment has been made against any of the companies since that time. They have sustained no injuries as a result of the rules complained of. Should the rules be arbitrarily and unreasonably applied by the Director of Finance in the making of assessments, the remedy provided by the statute is adequate. The act provides for the review of all questions of law and fact by *certiorari* to the circuit and superior courts. (Ill. Rev. Stat. 1937, chap. 120, par. 451.) Where the statutory remedy offers opportunity for adequate relief it must be exhausted before equity will act. (*Bistor* v. *McDonough*, 348 Ill. 624.) Therefore, the trial court was correct in refusing to consider the validity of these administrative rules and regulations.

The decree is affirmed.

*Decree affirmed.*