(No. 34833.—

WESTERN PHOTO & SUPPLY Co., *et al.,* Appellees, *vs.* RICHARD J. LYONS, Director of Revenue, *et al.,* Appellants.

*Opinion filed November 26, 1958—Rehearing denied Jan. 22, 1959.*

LATHAM CASTLE, Attorney General, of Springfield, (WILLIAM C. WINES, THEODORE G. MAHERAS, and RAYMOND S. SARNOW, of counsel,) for appellants.

PHILIP J. SIMON, of Chicago, (CHARLES O. PARKER, of Chicago, of counsel,) for appellees.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

The original proceeding in this cause was instituted in the circuit court of Cook County in 1944 by a number of photographic suppliers, including these plaintiffs, against certain State officers, being the Director of Revenue, the Attorney General, and the State Treasurer. Plaintiffs sought to restrain the enforcement of the provisions of the Retailers' Occupation Tax Act on the business of selling photographic materials and supplies to service rendering customers, excluding noncomponent chemicals. Pursuant to a hearing, the relief as prayed was granted and a decree entered on July 24, 1945.

The present proceeding arises on an amended petition filed in the said original proceeding on June 27, 1955, by three or the original plaintiffs. These plaintiffs sought the entry of a supplemental decree restraining the State officials from enforcing the provisions of the Retailers' Occupation Tax Act against plaintiffs on sales of film made to photographers, and to expunge certain proposed assessments issued on their sales of film to photographers. A hearing was had before the master and the court and a supplemental decree was entered as prayed. It is from the entry of that decree that the defendant State officials have appealed. The revenue being involved, this court has jurisdiction.

From the evidence produced before the court and the master it appears that, in general, photographers customarily retain the negatives developed from the film and consider them their stock in trade, seldom discuss the right

to or title to the negatives with a customer, make no charge for the delivery of the negative to a customer, and treat the cost of the negative no different from their other overhead expense in determining the price of photographs. It is shown that about one half of the film purchased is discarded by the photographer.

The Retailers' Occupation Tax Act provides that a person is not engaged in the business of selling at retail, and hence not subject to the tax, unless he transfers tangible personal property for use or consumption and not for resale in any form as tangible personal property. (Ill. Rev. Stat. 1957, chap. 120, par. 440.) The problem in this case thus resolves itself into the question of whether plaintiffs' sales of film to photographers are for use and consumption, or are resold by the photographers.

It is the position of the plaintiffs that the photographer develops a negative from the film, the title to which is transferred to the customer, hence plaintiffs are not selling the film at retail to the photographers. They cite numerous cases in support of their assertion that title to the negative is transferred to the customer. (*Lumiere* v. *Robertson-Cole,* (2d Cir. 1922) 280 Fed. 550; *Press Pub. Co.* v. *Falk,* (Cir. S.D. N.Y. 1894), 59 Fed. 324; *Colten* v. *Jacques Marchais, Inc.* (1946) 61 N.Y.S.2d 269; *Lawrence* v. *Ylla,* (1945) 55 N.Y.S.2d 343; *Holmes* v. *Underwood & Underwood,* (1929) 225 N.Y. App. Div. 360; *White Studio, Inc.* v. *Dreyfoos,* (1913) 156 N.Y.App. Div. 762; *Hochstadter* v. *Tarr, Inc.* (1947) 68 N.Y.S.2d 762; *Moore* v. *Rugg,* (1890) 44 Minn. 28; *Voss* v. *Gray,* (1941) 70 N.D. 727, 298 N.W.1; and *Eick* v. *Perk Dog Food Co.* 347 Ill. App. 293.) Three of these cases, *Lumiere* v. *Robertson-Cole Dist. Corp.* 280 Fed. 550, *Press Pub. Co.* v. *Falk,* 59 Fed. 324, and *Colten* v. *Jacques Marchais, Inc.* 61 N.Y.S.2d 269, state that title to the negative is purchased by the customer. Examination discloses that in each the statement is pure *dicta.* The two Federal cases involve ques-

tions of copyright law only. The *Lumiere case* considers whether the customer or the photographer has the right to copyright a negative, and the *Falk case* discusses who may use a negative which has been copyrighted by the photographer. These questions of copyright bear little significance to the question at hand. The *Colten case,* decided in 1946, relies on several other cases as authority for its general assertion that the customer was entitled to the negative. (*Lawrence* v. *Ylla,* 55 N.Y.S.2d 343; *Holmes* v. *Underwood & Underwood,* 225 N.Y. App. Div. 360; *White Studio, Inc.* v. *Dreyfoos,* 156 N.Y. App. Div. 762.) In none of these three cases was any question of title to the negative determined. They merely found, as do the cited cases of *Voss* v. *Gray,* 70 N.D. 727, and *Moore* v. *Rugg,* 44 Minn. 28, that an implied contract exists between the photographer and the customer that the photographer cannot use or sell the negative and the photographs produced therefrom without the express consent of the customer. The case of *Hochstadter* v. *Tarr, Inc.* 68 N.Y.S.2d 762, decided in 1947, positively states that no case had been decided in that State which found the ownership of the negative to be vested in the customer, in the absence of an express agreement. We have no express agreement in our case. The *Eick case* merely recognized a right of privacy in the customer which precludes the use of his photograph without his express consent.

Thus plaintiffs offer no authority that determines that the title to the negative is generally vested in the customer. The evidence offered here does not indicate that there is generally a sale of the negative within our statutory definition of a sale. (Ill. Rev. Stat. 1957, chap. 121½, par. 1.) However, in our opinion, the contention of the plaintiff as to the title to the negative is not material to the determination of the issue here presented.

What the customer really purchases from the photographer is artistic skill and service, and in his performance, the photographer necessarily uses the film. The real ques-

tion raised here is: does the use of the film in its development into a negative constitute such use as renders the sale of the film taxable?

The "use" of tangible personal property which determines the application of this tax is the possession and employment of the thing to the purpose to which it is adapted. (*Revzan* v. *Nudelman,* 370 Ill. 180; *Material Service Corp.* v. *McKibbin,* 380 Ill. 226.) In the case of *Herlihy Mid-Continent Co.* v. *Nudelman,* 367 Ill. 600, the sale of sand and gravel to a construction firm for use in the construction of sewers sold to a city was held taxable under this act. Likewise in the case of *Acme Printing Ink Co.* v. *Nudelman,* 371 Ill. 217, the ink sold to a printer to be used in printing stationery to be sold to customers was held taxable. These cases involved as much of a question of transfer of title to the property in question as this case. The film used by photographers certainly loses its identity as film when developed into a negative, just as the ink or the sand and gravel did in the above cases. The fact that the customer derives some benefit from the film by its development into a negative, or that he might possibly obtain title to the negative does not detract from the complete and ultimate use and consumption of the film. (*Kohnstamm & Co.* v. *Department of Revenue,* 9 Ill.2d 182.) Certainly the photographer uses and consumes the approximately fifty per cent of the film purchased which he discards in the course of his service.

The film being thus used or consumed by the photographer, its sale is a sale at retail. The sales of film by these plaintiffs are therefore subject to the tax. The decree of the circuit court of Cook County is reversed.

*Decree reversed.*