**TOWN OF CLARKSTOWN, Plaintiff,**

v.

**Michael H. REEDER, Steven L. Abel, Reeder & Abel, and Juvenile Justice Consultants, Defendants.**

**No. 83 Civ. 2460 (KTD).**

United States District Court,
S.D. New York.

June 3, 1983.

Philip Furgang, Spring Valley, N.Y., for plaintiff.

Reeder, Abel & Kossin, New City, N.Y., for defendants; Steven L. Abel, New City, N.Y., of counsel.

MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge:

In 1980, the Town of Clarkstown in Rockland County, New York, decided to establish a Youth Court, a quasi-judicial forum where youths act as judge, lawyer and court officer. This innovative public service involves and educates the town's young

people in legal matters and at the same time disposes of real criminal complaints against minors. The Youth Court requires the cooperation, contributions and efforts of Clarkstown citizens. Unfortunately, what began as a laudable project to benefit Clarkstown youths has degenerated into an unseemly imbroglio between one of the project's major contributors and the Town. The inability of the parties to arrive at an agreeable settlement requires judicial resolution even though this lawsuit inevitably harms a civic project that all parties believe in.

The plaintiff Town of Clarkstown moved by Order to Show Cause on March 30, 1983, for a preliminary injunction preventing defendants Michael Reeder, Juvenile Justice Consultants, Steven L. Abel and Reeder & Abel from using in any manner the Clarkstown Youth Court Handbook and Manual ("Manual") and requesting that the defendants' copies of the Manual be submitted to the Clerk of the Court for impoundment. The defendants subsequently cross moved for preliminary relief to prevent Clarkstown's access to the same Manual and further requesting that plaintiff similarly submit their copies of the Manual to the Clerk of the Court. A hearing was held on April 15 and April 22, 1983.[1] For the reasons that follow, the plaintiff's motion for a preliminary injunction is granted.

## BACKGROUND

The Town of Clarkstown became interested in the creation of a Youth Court in 1980. The Clarkstown budget, however, had insufficient funds available to establish this program. An extensive volunteer campaign was initiated and after contributions were received, Clarkstown obtained 50 percent funding from the New York State Division for Youth. The funding was awarded with the explicit language that "[n]o fee may be charged for programs supported by state aid." Plaintiff's Exhib-

its A, B & C. This money enabled Clarkstown to start its Youth Court and to hire Detective Curt Settle, a veteran Clarkstown police officer who helped found the Youth Court and who had been volunteering his time up until this point. Settle acts as the Chairman of the Executive Board, a position he heads with the approval of Clarkstown and its Chief of Police. Settle Affidavit at ¶ 5.

In furtherance of Clarkstown's goal, Detective Settle went to Oneida, New York in 1980 to examine its Youth Court system. He was given a copy of "A Handbook for the City of Oneida's Youth Court." Plaintiff's Exhibit 1. This handbook provided a starting point for Clarkstown.

On April 30, 1981, the Executive Board of the Clarkstown Youth Court held its first meeting. Present at the meeting were Jack Horan, Gerald Bierker, Michael Reeder, Mike Dutkowki, William Bullock, Sue Kolodny, Hilton Kaufman, John McLaughlin, Philip B. Fogel, John Kubran and Beverly Kaufman. Plaintiff's Exhibit D. Settle had invited Reeder to attend this meeting and to join the Executive Board. During this meeting the Board decided to create a Clarkstown Manual for the Youth Court. The handbook from Oneida, a town considerably smaller than Clarkstown, was not considered functional for a town of Clarkstown's size. Reeder, Fogel and Settle (he was an ex-officio member of all the committees) were chosen to serve on the Constitution Committee to draft the Youth Court constitution. Reeder was also chosen to serve on the Steering Committee, which controlled the day to day operations of setting up the court, and he was appointed as a Training Officer, to help teach the Clarkstown Youth the workings of the Youth Court. It was assumed from the first Executive Board meeting that all who were devoting their services and expertise were volunteering for the betterment of the Clarkstown youth.

---

1. At the conclusion of the hearing, I denied the defendants' request for a preliminary injunction. See the Hearing minutes at 134. (Future references to the hearing transcript will be des-ignated "Tr. at ...."). Thus, this memorandum will only discuss the plaintiff's request for preliminary relief.

Settle had given Reeder the Oneida handbook to assist him in his preparation of a manual. Reeder believed the handbook was unsatisfactory and he began drafting a Clarkstown Manual. The Manual that Reeder submitted to Settle during the summer of 1981 was written mostly by Reeder and compiled by Reeder in his office with the aid of his word processor and staff after receiving conceptual and practical input from many people. During the drafting stages, portions of the Manual were discussed and changed and approved by the Steering Committee, before being formally adopted by the Executive Board. Specifically, the Rules, Regulation and Constitution were openly discussed before Reeder reduced to final form the concepts and ideas of all consulted. Plaintiff's Exhibit F. Moreover, Philip Fogel, a member of the Constitution Committee, not only discussed the Clarkstown Youth Court constitution with Reeder, but also provided substantial contributions to the constitution. Tr. at 95.

The rest of the Manual did not evolve from quite the same collaborative effort as the rest of the handbook. It was not, however, entirely attributable to Michael Reeder. Monroe Mayer, a local attorney, submitted an outline for a portion of the Manual. Plaintiff's Exhibit 12; Defendants' Exhibit F. Reeder had solicited the help of local attorneys in drafting other portions of the Manual, and he incorporated their ideas and suggestions into its text. *See* Defendants' Exhibit B, Affirmations of Richard Liberth, Alvin L. Spitzer, Arthur Ferraro, Gary Lipton; the Affidavit of Stephanie Langbaum; Tr. at 101. The aid and assistance provided by other local citizens in the drafting of the Manual, which Reeder acknowledged in Plaintiff's Exhibit F, does not compare with the thought and time Michael Reeder devoted to the Manual. During the summer of 1981 alone, Reeder devoted many hours to the Manual. Tr. at 103.

Sections of the Manual were also purposely left open for input by the Youth Court members. Tr. at 100. Reeder eventually drafted clauses on sentencing, dress code, and the Youth Court code of responsibility after Settle relayed the feedback received by the youths in the Steering Committee on these issues. Tr. at 107–08. Settle provided a constant sounding board throughout the preparatory stages. Tr. at 25.

Once the Manual was complete training sessions started and the Youth Court began full operation. Changes and updates, however, were made in the Manual and continue to be made as the need arises. Tr. at 53–54. Demonstrations of the operations of the Clarkstown Youth Court were made by Settle in Newburgh, New York, at the Concord Hotel for the New York State Juvenile Officer Association, in Albany for the New York State Bar Association and the Education Department, at Tappan Zee High School for the Columbia University teachers and in Ramapo, New York. Tr. at 80–81. Mike Reeder accompanied Settle on the Ramapo trip in the summer of 1982. They brought the Manual along, showed it to many people and offered it to the town. Tr. at 81. At no time up to this point had Reeder asserted ownership of a copyright interest in the Manual.

The spirit of cooperation that pervaded the establishment and continuation of the Clarkstown Youth Court up until that time has now dissipated. Shortly after the visit to Ramapo, Settle learned that Reeder's partnership, Juvenile Justice Consultants, had contracted with the Town of Ramapo "to help them form a Youth Court." Plaintiff's Exhibit K at 4. *See* Plaintiff's Exhibit 19; Settle Affidavit at ¶ 22. In August, 1982, Settle received a cover sheet for the Manual indicating Michael Reeder's ownership of a 1982 copyright. Plaintiff's Exhibit O; Settle Affidavit at ¶ 23. After inquiries into this copyright, Settle was informed that Reeder had in fact acquired a copyright but that Clarkstown had a license to use the Manual. Plaintiff's Exhibit P.

Reeder's copyright was the subject of a Youth Court Executive Committee meeting on November 18, 1982. Reeder informed the Committee that due to his copyright, Clarkstown could only use the Manual with

his permission. Plaintiff's Exhibit K at 4. A subcommittee, headed by Philip Fogel, was appointed to investigate this turn of events. A meeting of this subcommittee on December 9, 1982 and a subsequent meeting of the Executive Board resulted in a written request by Curt Settle on January 11, 1983, that Reeder "relinquish all claims to the copyright and assign them to the Town of Clarkstown . . . ." Defendants' Exhibit K. Reeder not only rejected this request but revoked the earlier license he had granted Clarkstown and threatened legal action if copyrighted materials were distributed.

Clarkstown and Reeder insisted that they were the respective rightful owners of the copyright to the Clarkstown Manual. Plaintiff subsequently filed its own copyright registration. Plaintiff's Exhibit A, attached to the complaint. This lawsuit ensued. The complaint alleges copyright infringement, unfair competition and trademark infringement. The preliminary injunction plaintiff seeks is also based on these same statutory and common law grounds.

## DISCUSSION

A preliminary injunction properly issues when the movant can demonstrate:

a showing of (a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief.

*Sperry International Trade, Inc. v. Government of Israel*, 670 F.2d 8, 11 (2d Cir.1982) (quoting *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir.1979) (per curiam)).

*Arrow United Industries, Inc. v. Hugh Richards, Inc.*, 678 F.2d 410, 413–14 (2d Cir.1982). The allegations of irreparable harm, a *sine qua non* in the granting of an injunction, *United States Postal Service v. Brennan*, 579 F.2d 188, 191 (2d Cir.1978),

need not be extensive in copyright infringement cases, "because such injury can normally be presumed when a copyright is infringed." *Wainwright Securities v. Wall Street Transcript Corp.*, 558 F.2d 91, 94 (2d Cir.1977), *cert. denied*, 434 U.S. 1014, 98 S.Ct. 730, 54 L.Ed.2d 759 (1978).

The irreparable harm alleged by the plaintiff is sufficient to satisfy this less rigorous standard. As stated above, the grant from the New York State Division for Youth enables the Clarkstown Youth Court to function. The rules and regulations of the Division for Youth prohibit continued funding for "activities for which a fee is charged which would tend to exclude children from participating." Affidavit of David N. Goldin, Deputy Counsel to the New York State Division for Youth, at ¶ 5. The fee defendants charge for the Manual "tends to exclude children from participating" by making municipalities pay for services and material the plaintiff will provide free. Towns might then choose for bugetary concerns not to establish a Youth Court. The defendants' concerted efforts to market the Manual, therefore, might well jeopardize future Youth Courts. The Clarkstown grants and the existence of the Clarkstown Youth Court also might be jeopardized.

Confusion over the origin of the Manual might also result in irreparable injury. Towns that were told at one point that all materials were available free of charge from Clarkstown are now approached by defendants who claim ownership of and charge for the same materials. The controversy herein thus boils down to one issue: the likelihood of plaintiff's success in proving copyright infringement.[2]

The essence of plaintiff's copyright infringement claim is that Michael Reeder's copyright in the Manual infringes upon the Town's copyright in the same Manual. Plaintiff argues that Reeder was a volunteer employee of Clarkstown and prepared the Manual within the scope of his employ-

---

**2.** The likelihood that plaintiff will succeed on its copyright infringement cause of action ren-

ders it unnecessary to consider the other counts of the complaint.

ment. The Manual thus becomes a "work made for hire" as defined by the copyright laws. Plaintiff's argument continues that Clarkstown is considered the author or the rightful owner of the copyright of a "work made for hire." Defendants contend that Reeder was not a Clarkstown employee and therefore the Manual cannot qualify as a "work made for hire" within the meaning of the copyright laws. Each argument will be addressed *seriatim*.

### 1. Reeder's Status as Employee.

It is undisputed that Mr. Reeder volunteered his time to the Clarkstown Youth Court. Compensation, however, is not a determinative factor in evaluating Reeder's employment status. "[O]ne may be an employee ... if the writing is done as an accommodation with no compensation at all." 1 M. Nimmer, Nimmer on Copyright § 5.03[B][a], at 5–12 (1982). Therefore, a volunteer worker may be considered an employee for purposes of the copyright laws.

The crucial factor to be considered in deciding whether Reeder was a Clarkstown employee engaged in an employment relationship with Clarkstown "is whether the alleged employer has the right to direct and supervise the manner in which the writer performs his work." *Id.* *See Epoch Producing Corp. v. Killiam Shows, Inc.,* 522 F.2d 737, 744 (2d Cir.1975), *cert. denied,* 424 U.S. 955, 96 S.Ct. 1429, 47 L.Ed.2d 360 (1976); *Roy Export, Etc. v. Columbia Broadcasting System,* 503 F.Supp. 1137, 1149 (S.D.N.Y.1980), *aff'd,* 672 F.2d 1095 (2d Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982). The parties agree that resolution of the issue of Clarkstown's supervision and control over the Manual is tantamount to a ruling on the preliminary injunction. Tr. at 2, 3.

The facts gleaned from the testimony, the affidavits and the exhibits all lead to the undeniable conclusion that Clarkstown had the "right to direct and supervise" the manner in which the Clarkstown Manual was created. From the Clarkstown Youth Court's inception, it was evident that all parties were working toward a common goal: the creation of a successful Youth Court. To realize this goal, tasks were assigned, jobs allocated and available resources utilized. Michael Reeder was an important cog in the wheel. His work on the various committees, as a training officer and in compiling the Manual was exemplary from all accounts and indispensable to the Youth Court's success. All work he performed, however, was in his role either as a member of the Executive Board or as a member of the Constitution or Steering Committee or as a Training Officer. At all times he was under the control of Clarkstown and its appointed chairman of the Executive Committee, Curt Settle.

Clarkstown's and Settle's implicit power to control and supervise Reeder's activities manifested itself in several respects. First, Settle was empowered implicitly to remove or appoint members of the Board and its committees by the Youth Court constitution; that power encompassed both the Executive Committee and the Steering Committee. Tr. at 51. For example, after the instant controversy arose, Settle suspended Reeder from the Executive Board. Tr. at 82. Second, Settle and Reeder had on-going discussions about the operation of the Youth Court and the drafting of the Manual. They discussed the items to be included in the Manual as well as necessary changes. Tr. at 47–49. Third, Reeder and Phil Fogel were appointed by Settle to prepare the Youth Court constitution, rules and regulations and text portion of the Manual and both men performed their appointed duties. Tr. at 99–101. This is further indication that Reeder was not given sole creative control over the Manual. Fourth, Reeder submitted proposals to both the Steering Committee and the Executive Board for approval and incorporation into the Manual. Plaintiff's Exhibits 6, 8, 9, 17, 18, E, F, and G.

Reeder argues in essence that his putting pen to paper and drafting the Manual was without Clarkstown interference and entitles him to ownership of the copyright. This argument improperly places primary emphasis on the efforts of the scribe and

not on the genesis of the ideas memorialized in the work. I recognize that the copyright laws protect the expression of ideas and not the ideas themselves. 1 M. Nimmer, Nimmer on Copyright, § 2.03[D], at 2–32 (1982). Reeder, however, readily concedes that the Manual is a compilation of ideas, suggestions and outlines extracted from the Oneida manual, the Executive Board, the Steering Committee, the Youth Court members, Phil Fogel, Curt Settle, and other Clarkstown citizens. Reeder Affidavit at ¶¶ 12, 14, 15, 16, 17, 21, and 22. The contribution of others was even acknowledged by Reeder at an Executive Board meeting. Plaintiff's Exhibit H. The contribution of others included not only ideas and suggestions but also direct control and monitoring of Reeder's expression of his own thoughts and the thoughts of others. The input Reeder received from all sources clearly helped shape the Manual into its present form. In the face of this evidence, Reeder cannot argue persuasively that the compilation of the Manual was a result of his original thought and was not subject to control or supervision by Clarkstown.

The fact that Reeder never received a direct order from Settle or any other Clarkstown official mandating that he write the Manual or that it be written in conformity with a specific format is not dispositive. Reeder and Settle previously enjoyed a congenial professional and social relationship. This friendship did not require Settle to formally order Reeder to perform his employment duties satisfactorily. To infer such a requirement would be inconsistent with their amiable employer-employee relationship and would unduly subvert the enforcement of the copyright laws. Settle testified that he never ordered Reeder to make changes on materials submitted: "It was an open discussion .... It was just an open relationship and we discussed changes and he would change it." Tr. at 50.

Reeder in essence argues that the Youth Court's acceptance of his proposals and drafts negates any control it had over the Manual. The employment relationship rests, however, on the *right* to control and

not the exercise of that right. 1 M. Nimmer, Nimmer on Copyright § 5.03[B][a] at 5–17 (1982).

The above facts establish without question that the Clarkstown Youth Court had the power to control the manner in which Reeder drafted the Manual. The determination that Clarkstown and Settle had the power to supervise and control Reeder's work product categorizes Reeder as a Youth Court employee. It thus remains to be resolved whether the Manual's copyright belongs to Clarkstown as employer or Reeder as employee.

2. Work made for hire.

An employer owns the copyright of a "work made for hire." 17 U.S.C. § 201(b). A "work made for hire" is defined as "a work prepared by an employee within the scope of his or her employment ...." 17 U.S.C. § 101. In the absence of a contrary agreement, the literary efforts of an employee rendered within the scope of employment remain the property of the employer. *See* 1 M. Nimmer, Nimmer on Copyright § 5.03[B] at 5–14 (1982).

The same facts that supported my determination that Reeder was a Clarkstown employee compel the conclusion that Reeder's work on the Manual was part and parcel of his employment duties. The Manual was prepared in conjunction with Reeder's dual roles as Training Officer and member of the various committees. The revisions of the Oneida handbook and drafting of new portions of the Clarkstown Manual were compelled by Reeder's conscientousness and thoroughness as a Training Officer, and as a member of the Youth Court governing committees. These motivating factors are entirely consistent with his employment responsibilities. An employer always hopes that an employee will devote his best efforts to work assignments. I therefore find that because the Manual was drafted by a Clarkstown employee, Michael Reeder, within the purview of his employment,

Clarkstown is the rightful owner of the copyright.[3]

The defendants have failed to defeat Clarkstown's persuasive arguments in support of its proof of copyright infringement. Plaintiff has demonstrated the likelihood that it would succeed in proving ownership of the copyright and the parties agree that resolution of this issue entitles the owner to preliminary relief. The unfortunate aspect of this case is that a citizen's exemplary contribution to his community has been negated by the grasping for a profitable business venture. This has blinded the defendants from their original purpose and has worked to the detriment of the Clarkstown community and others interested in the Youth Court program.

In sum, the plaintiff's motion for a preliminary injunction is granted in its entirety.

SO ORDERED.

---

**3.** The defendants argue alternatively that even if Reeder is considered a Clarkstown employee, the Manual fits under the teacher exception to the copyright laws. I disagree. This exception provides that "if a teacher elects to reduce his lectures to writing, the teacher and not the institution employing him owns the copyright in such lectures." 1 M. Nimmer, Nimmer on Copyright § 5.03[B] at 5–15 (1982). This result is compelled by the nature of our educational system. The expression of a teacher's ideas normally cannot be controlled by his employer. The instant case is distinguishable. Clarkstown, as proven *supra*, was in a position to control the manner in which the Manual was written. *The teaching exception, therefore, was not intended to govern this case.*