CATHERINE SYKEE, Plaintiff-Appellee, *v.* GEORGIA LEE ROULO, Defendant-Appellant.

First District (1st Division) No. 82—2952

Opinion filed January 23, 1984.—Rehearing denied April 4, 1984.

CAMPBELL, J., specially concurring.
BUCKLEY, P.J., dissenting.

Paul Bradley and Ellen R. Domph, both of Chicago, for appellant.

Thomas G. King, of Chicago, for appellee.

JUSTICE McGLOON delivered the decision of the court and the following opinion:

Plaintiff, Catherine Sykee, brought this action for an order of replevin to recover possession of photographic negatives allegedly taken at plaintiff's request at her home on November 11, 1981. (Ill. Rev. Stat. 1981, ch. 110, par. 19—101 *et seq.*) Defendant appeals from an order of the trial court confirming its grant of the order, contending she is the owner of the negatives by operation of law under the Copyright Law Revision Act (17 U.S.C. sec. 101 *et seq.* (1976)).

Catherine Sykee testified that she had planned a cocktail party in honor of the 89th birthday of an artist named Erte. Defendant, Ms. Georgia Lee Roulo, telephoned plaintiff at the suggestion of a mutual friend and said she was available to take pictures at the party. Plaintiff explained the nature of the party and said she would like three or four rolls of color film used with 36 pictures per roll. She agreed to defendant's fee of $150, and it was arranged that defendant would arrive one-half hour before the guests. There was no discussion with respect to photographic proofs, negatives or any additional charges

above $150. Defendant took pictures at the party, which was attended by between 100 and 150 people, under the direction of plaintiff and her husband. She did not accompany defendant during the entire evening or direct her as to each photograph, but did direct that certain photographs be taken at the beginning and the end of the party and at various times in between. A few days later, plaintiff paid defendant the $150 fee, plus an additional $50 fee for proof sheets which defendant brought to plaintiff's home to show to her. Defendant offered to make enlargements for $35 to $40 each, but plaintiff thought this was too high and asked defendant for the negatives. Defendant refused, although she did offer to have enlargements made for as little as $7.50 each.

Defendant testified that plaintiff hired her to take photographs and her charge for the evening was $150. At this time, prior to the party, there was no discussion of any other charges and there was no written agreement. But she never indicated to plaintiff that the prints would be free. She told plaintiff that a mutual friend told her plaintiff was in trouble because plaintiff needed a photographer for her party. Defendant said she would be willing to help plaintiff on condition that plaintiff agree that the negatives would be defendant's property; otherwise she explained to plaintiff that she was not interested in photographing the party. Plaintiff expressed no disagreement with that proposition. The first time she told plaintiff the charge per picture would be between $35 and $40 was several days after the party. Defendant was at the party from 5:30 p.m. until approximately 9:15 p.m. and during this time she used her own judgment in taking the photographs. Although there were requests to take pictures of particular individuals, this was only a small portion of the evening's work.

Defendant first contends both parties understood that defendant owned the negatives and that plaintiff's testimony does not contradict this. Plaintiff responds that plaintiff denied any conversation with defendant that the negatives would belong to defendant. After reviewing the testimony and giving proper deference to the impressions of credibility received by the trial judge, who had the opportunity to observe the witnesses, we conclude that the evidence concerning ownership of the negatives was conflicting, and that the trial court properly accepted plaintiff's testimony that there was no such conversation. (*Cf. Watson Lumber Co. v. Mouser* (1975), 30 Ill. App. 3d 100, 106, 333 N.E.2d 19.) The trial court's finding for plaintiff was not against the manifest weight of the evidence.

Defendant next argues she owns the negatives by operation of Federal law, since, under section 201(a) of the Copyright Law Revi-

sion Act of 1976 (17 U.S.C. sec. 201(a) (Supp. IV 1980)), ownership of a copyright is vested in the author of a work. Plaintiff responds that under section 201(b) the employer or other person for whom the work is prepared is considered the author for copyright purposes. (17 U.S.C. sec. 201(b) (Supp. IV 1980).) Thus, unless the photographs were produced as a work for hire, copyright ownership is in defendant. *Childers v. High Society Magazine, Inc.* (S.D.N.Y. 1983), 561 F. Supp. 1374, 1375.

In relevant part, section 201 provides:

"Sec. 201. Ownership of copyright

(a) Initial ownership.

Copyright in a work protected under this title vests initially in the author or authors of the work. The authors of a joint work are coowners of copyright in the work.

(b) Works made for hire.

In the case of a work made for hire, the employer or other person for whom the work was prepared is considered the author for purposes of this title, and, unless the parties have expressly agreed otherwise in a written instrument signed by them, owns all of the rights comprised in the copyright."

The parties' views also diverge concerning whether the negatives here come within the statutory definition of a "work made for hire," set forth in section 101 (17 U.S.C. sec. 101 (Supp. IV 1980)), which provides in relevant part:

"A 'work made for hire' is—

(1) a work prepared by an employee within the scope of his or her employment; or

(2) a work specially ordered or commissioned for use as a contribution to a collective work, as a part of a motion picture or other audiovisual work, as a translation, as a supplementary work, as a compilation, as an instructional text, as a test, as answer material for a test, or as an atlas, if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire. For the purpose of the foregoing sentence, a 'supplementary work' is a work prepared for publication as a secondary adjunct to a work by another author for the purpose of introducing, concluding, illustrating, explaining, revising, commenting upon, or assisting in the use of the other work, such as forewords, afterwords, pictorial illustrations, maps, charts, tables, editorial notes, musical

arrangements, answer material for tests, bibliographies, appendixes, and indexes, and an 'instructional text' is a literary, pictorial, or graphic work prepared for publication and with the purpose of use in systematic instructional activities."

Defendant maintains her work fits into neither of the above categories. Plaintiff maintains that defendant's work was "work prepared by an employee within the scope of his or her employment," that is, it falls within subsection (1). Defendant maintains plaintiff did not have the right to direct and supervise the manner in which defendant performed her work, and she was an independent professional who bought her own film and paid her own expenses. We find the authorities cited by defendant to show she was an independent contractor (*Epoch Producing Corp. v. Killiam Shows, Inc.* (2d Cir. 1975), 522 F.2d 737, and *Donaldson Publishing Co. v. Bregman, Vocco & Conn, Inc.* (2d Cir. 1967), 375 F.2d 639) are distinguishable. In *Lumiere v. Robertson-Cole Distributing Corp.* (2d Cir. 1922), 280 F. 550, cited by plaintiff, a dispute arose concerning who owned the copyrights of photographs. The photographer claimed he took the photographs at his own expense and a corporation claimed it paid the photographer to take the pictures. The court found that the pictures were taken at the direction of the company for pay received by the photographer, and that the photographs for which the company subsequently paid were free from any copyrights the photographer might have obtained. The court stated (280 F. 550, 552):

> "The usual contract between a photographer and his customer is one of employment. The production of the photographs is work done for the customer, not for the photographer, and the sitter is entitled to all proprietory rights therein. The work is done for the person procuring it to be done and the negative, so far as it is a picture, or capable of producing pictures of that person and all photographs so made from it, belong to the person. Neither the artists nor anyone else has any right to make pictures from the negative or to copy the photographs, if not otherwise published, for anyone else."

In my opinion, whether the defendant was either an employee or an independent contractor presented a question of fact. The crucial question is whether plaintiff had the right to control the work even if she did not exercise it. (*Cf. Town of Clarkstown v. Reeder* (S.D.N.Y. 1983), 566 F. Supp. 137.) But, plaintiff testified she did exercise control over the manner in which defendant performed the work. Thus, the plaintiff, for whom the work was prepared, is the author under section 201(b), since the photography was "a work made for hire,"

that is, done by an employee within the scope of her employment as stated in subsection (1) of the definition of a "work made for hire" in section 101. The evidence presented warranted the inference that the negatives were produced by defendant who was employed by plaintiff in her home for this very purpose and who was paid to make them. *Cf. Bleistein v. Donald Lithographing Co.* (1903), 188 U.S. 239, 248, 47 L. Ed. 460, 461, 23 S. Ct. 298, 299.

Defendant has requested that plaintiff be directed to pay costs and attorneys for wrongfully obtaining an order of replevin, and that defendant be awarded costs and attorney fees under section 41 of the Civil Practice Act, now recodified as section 2—611 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 2—611). Given the disposition of the case, these requests must be denied.

The judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

JUSTICE CAMPBELL, specially concurring:

Although I agree that the judgment should be affirmed, I do so on other grounds. For that reason I offer these comments.

The complaint in replevin filed in this case sought, *inter alia*, an order by the trial court for the possession of the property involved. The judgment order entered in favor of plaintiff provides as follows:

"It is hereby ordered that after a full trial on the merits that this court finds for plaintiff Catherine Sykee and against defendant Georgia Lee Roulo.

It is further ordered that the prior finding of this court that plaintiff shall have possession of the negatives is confirmed."

Notwithstanding the above order, defendant has devoted her brief to arguments relating to issues pertaining to matters arising under the Federal Copyright Act (17 U.S.C. sec. 101 *et seq.* (1976)) and the matter of the title to the negatives by virtue of said Act.

Defendant has not pointed out any reference in the record to indicate that the trial court considered any matters relating to the Federal Copyright Act or made any ruling relating to title to the negatives. The judgment order is completely silent on any issue relating to the title or ownership of the negatives or the Copyright Act.

In fact the record discloses that defendant admitted that she has never filed any application or registration pursuant to the Copyright Act. The pictures were taken on or about November 11, 1981, and the complaint for replevin was filed on March 10, 1982. Defendant has not demonstrated how she was entitled to invoke the protection of

said act in these proceedings, where the facts are in dispute, without the necessity of compliance with various statutory formalities, such as registration.

It appears that the trial court limited its determination as to the right of possession and did not find it necessary to make factual findings with regard to the issue of title or ownership to said negatives by either party. See *Western Photo & Supply Co. v. Lyons* (1958), 15 Ill. 2d 318, 155 N.E.2d 1.

For the foregoing reasons, I concur in the results reached in this case and would affirm the judgment of the circuit court of Cook County.

PRESIDING JUSTICE BUCKLEY, dissenting:

I respectfully dissent from the decision of the majority affirming the order of replevin granted to plaintiff. Replevin is a remedy governed solely by statute and its requirements must be strictly followed. (*Jim's Furniture Mart, Inc. v. Harris* (1976), 42 Ill. App. 3d 488, 490, 356 N.E.2d 175.) In a replevin action, plaintiff has the burden of proof of ownership and the plaintiff must prevail on the strength of his or her own title or right to immediate possession. (*Huber Pontiac, Inc. v. Wells* (1978), 59 Ill. App. 3d 14, 17, 375 N.E.2d 149.) In this fact situation the only basis upon which plaintiff would be entitled to possession of these negatives would be as their owner. Plaintiff has failed to prove she is the owner of the negatives in dispute.

It is plaintiff's contention that the oral agreement entered into between the parties included the sale of negatives. The record, however, is devoid of any evidence to support such a contention. Rather, the evidence shows only that plaintiff and defendant entered into an agreement whereby defendant was to be paid a specific amount of money to take pictures at plaintiff's party. In furtherance of this agreement, defendant incurred numerous expenses including the cost of film, rental of a flash and cab fare. Defendant testified that she made it clear in her initial conversation with plaintiff that she would be the owner of the negatives because at a future date she might want to exhibit prints of the photographs taken at the party. Significantly, this testimony is undisputed. Plaintiff does not contradict defendant's testimony, but states she simply does not remember that part of the conversation. Further, plaintiff fails to even allege that she in any way indicated at the time the agreement was entered into that she would be entitled to the negatives.

Following the party, defendant prepared a proof presentation so that plaintiff could determine which prints she wanted to purchase

from defendant. Plaintiff admitted that she was told by defendant that she could keep the proof presentation if she purchased $500 worth of prints. It seems clear that at this point both parties understood that defendant owned the negatives. If plaintiff believed she was entitled to ownership or possession of the negatives, she should have made a demand for them immediately after they were developed and then had the negatives made into prints on her own. Instead, upon viewing the proof presentation, she entered into negotiations with defendant for the price of the prints. Plaintiff's husband even ordered two prints from defendant. Only after deciding that the price of the prints was more than she wanted to spend did plaintiff claim ownership of the negatives.

Moreover, the record does not support the existence of an employer-employee relationship between the parties. The undisputed facts fail to establish that plaintiff directed or supervised defendant's photography or retained the right to do so. Defendant testified that other than asking her to take a picture of certain people, plaintiff did not accompany or direct her in the picture taking. Defendant additionally testified that she used her own judgment in taking the pictures. Plaintiff did not tell defendant where to have the prints developed; the decision was left up to defendant. Defendant's status as an independent professional, as opposed to an employee, is further borne out by the financial arrangement in this case. Defendant spent her own money for film and the rental of a flash. She paid her own cab fare to and from the party and, after plaintiff's husband ordered two prints, defendant paid cab fare to the photo lab and paid the deposit on the prints.

In my opinion, the plaintiff has failed to establish that she has title or right to immediate possession of the negatives in dispute. Consequently, the extraordinary remedy of replevin should not be available to plaintiff, and I would award to defendant attorney fees and costs wrongfully incurred in defending plaintiff's claim.